*** Filed ***
01:12 AM, 10 Apr, 2026
U.S.D.C., Eastern District of New York

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF NEW YORK**

--------------------------------------------------------------x

DEVEN SANON and SIMRAN HOTCHANDANI,

Plaintiffs,

-against-

SRIJANI CHATTERJEE, JOHN DOES 1-10,

and JANE DOES 1-10,

Defendants.

--------------------------------------------------------------x

**Civil Action No. 1:26-cv-580**

April 9, 2026

Hon. Ann M. Donnelly
United States District Judge
United States District Court
Eastern District of New York

**Re: *Sanon et al. v. Chatterjee et al.*, No. 1:26-cv-580**

**Defendant's Letter Motion for Protective Order and to Proceed Pseudonymously**

Dear Judge Donnelly:

I write respectfully as the pro se Defendant to request a protective order pursuant to Federal Rule of Civil Procedure 26(c), and leave to proceed under the pseudonym Jane Doe, in light of substantiated safety concerns supported by documentary evidence and controlling law in this Circuit.

This request is narrowly tailored. It does not seek to impede adjudication of Plaintiffs' claims, but to prevent the use of litigation as a mechanism to identify and locate a domestic violence victim whose safety depends on confidentiality.

**1. Repeated Federal Findings of Substantial Evidence of Abuse Involving Plaintiffs**

In February 2026, the United States Citizenship and Immigration Services issued a prima facie determination approving my Violence Against Women Act self-petition, attached as **Exhibit A**. This is my third prima facie approval, each issued upon review of evidentiary submissions establishing abuse.

A prima facie determination requires USCIS to find substantial evidence of battery or extreme cruelty. The repetition of such determinations reflects that multiple independent federal reviews have consistently found the evidentiary record sufficient to substantiate abuse.

The underlying record identifies members of Plaintiffs' family, including Plaintiffs themselves, as participants in that abuse. That record is supported by my sworn Affidavit of Abuse, attached as **Exhibit B**, detailing physical violence, coercion, and coordinated harassment involving Plaintiffs, and by the affidavit of Riva Ganguly Das, attached as **Exhibit C**, corroborating ongoing harassment, deportation threats, and attempts by Plaintiffs and their family to weaponise immigration processes against me.

While prima facie determinations are not final adjudications, the fact that three separate federal determinations have found substantial evidence of abuse involving the same individuals materially distinguishes this case from an ordinary civil dispute.

## 2. Governing Second Circuit Law Supports Pseudonymity Where Safety Is at Risk

In *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185 (2d Cir. 2008), the Second Circuit held that pseudonymity may be appropriate where identification would expose a party to physical or mental harm, retaliation, or similar injury, and where the balance of interests favors confidentiality over public disclosure.

Courts applying that framework consider whether the risk of harm is credible, whether the party seeking anonymity is particularly vulnerable, and whether anonymity would materially prejudice the opposing party. Those considerations weigh in favour of protection here.

## 3. The Risk of Harm Is Concrete, Ongoing, and Evidenced

The risk here is not speculative. The record demonstrates a pattern of litigation by Plaintiffs' family arising from the same allegations, documented efforts to involve federal authorities to pursue deportation against me, and sworn evidence of abuse, threats, and coordinated harassment involving Plaintiffs.

Plaintiffs are also actively seeking discovery into my domicile, IP address information, and location. In this posture, disclosure of my identity and location would materially increase the risk that litigation is used as a tool to locate me physically and continue the same pattern of harm already substantiated before a federal agency.

## 4. Rule 26(c) Authorises Protection Against Misuse of Discovery

Federal Rule of Civil Procedure 26(c) permits the Court to issue protective orders to prevent annoyance, embarrassment, oppression, or undue burden. Here, absent protection, discovery into location-based information risks functioning as a mechanism to identify my physical whereabouts rather than to adjudicate the merits of the claims.

The requested order is narrow. It would permit full merits discovery to proceed, while protecting only location-identifying information from public disclosure or unnecessary dissemination.

### 5. Federal VAWA Policy Strongly Supports Non-Disclosure

The confidentiality provisions of the Violence Against Women Act, including 34 U.S.C. § 12291(b)(2), reflect Congress's recognition that disclosure of a domestic violence victim's location creates serious safety risks. Requiring disclosure here would undermine that federal policy and expose me to the same harms that led to repeated federal findings of abuse.

### 6. The Requested Relief Is Narrow and Appropriate

The relief sought is limited. Plaintiffs already know my identity. All claims and defenses remain fully litigable. Discovery may proceed through counsel. The only restriction sought is on disclosure of my current location and identifying information.

### 7. The Court's Authorisation of Location-Related Discovery Heightens the Risk of Irreparable Harm

At the recent status conference, the Court permitted discovery relating to Defendant's domicile and IP address information. In the specific factual context of this case, such discovery materially heightens the risk that litigation will be used to identify Defendant's physical location.

As set forth above, the record reflects multiple federal prima facie determinations finding substantial evidence of abuse involving Plaintiffs, documented efforts by Plaintiffs and their family to involve federal authorities in attempts to have Defendant deported, and sworn evidence of coordinated harassment, threats, and efforts to locate Defendant.

In this context, discovery into IP addresses and domicile is not a neutral inquiry. It creates a direct pathway to identifying Defendant's current location, thereby exposing her to the same pattern of harm that has already been substantiated before a federal agency.

Accordingly, Defendant does not seek to preclude discovery, but respectfully requests that the Court require that any location-related discovery be conducted solely through counsel, prohibit disclosure of Defendant's precise residential address or current physical location, and permit redaction or anonymisation of information that could reasonably lead to identification of Defendant's whereabouts.

This narrowly tailored approach preserves the Court's discovery ruling while ensuring that discovery is not used as a mechanism to defeat the protections sought through this motion.

## 8. Conclusion

This Court is not being asked to shield Defendant from litigation, but to prevent litigation from being used as a tool to locate and expose an individual for whom multiple federal determinations have already found substantial evidence of abuse involving the opposing parties.

For these reasons, I respectfully request that the Court: (1) permit me to proceed under the pseudonym Jane Doe; (2) direct that filings omit my identifying information; (3) enter a protective order restricting disclosure of my location and identifying information; and (4) grant such further relief as the Court deems just and proper.

Respectfully submitted,

_____

Srijani Chatterjee

Pro Se Defendant

srijanic91@gmail.com


cc:

Daniel S. Szalkiewicz, Esq. Veridian Legal P.C., Attorneys for Plaintiffs

Marc Pelta, Esq. Prospective Counsel for Defendant

## TABLE OF EXHIBITS

Exhibit A - VAWA Petition: USCIS Prima Facie Determination (Feb 2026)

Exhibit B - VAWA Petition: Affidavit of Abuse

Exhibit C - Affidavit of Riva Ganguly Das

# EXHIBIT A

VAWA Petition: USCIS Prima Facie Determination

February 25, 2026

U.S. Department of Homeland Security
U.S. Citizenship and Immigration Services
38 River Road
Essex Junction, VT 05479-0001



**U.S. Citizenship
and Immigration
Services**

SRIJANI CHATTERJEE
ZOHAR LAW PLLC
c/o GADI ZOHAR
200 VESEY ST STE 24132
NEW YORK, NY 10281

RE: SRIJANI CHATTERJEE
I-360, Petition for Amerasian, Widow(er), or Special
Immigrant

## PRIMA FACIE DETERMINATION

**Receipt Date:** April 17, 2023

The request for an extension of a prima facie case for classification under the self-petitioning provisions of the Violence Against Women Act has been reviewed and granted.

THIS NOTICE MAY BE USED TO ASSIST YOU IN RECEIVING PUBLIC BENEFITS.

**THIS PRIMA FACIE DETERMINATION IS VALID FOR A PERIOD OF 180 DAYS FROM THE NOTICE DATE SHOWN ABOVE, AND EXPIRES ON THE DATE INDICATED BELOW.**

We will send you a written notice as soon as we make a decision on this case. It is not expected that a final decision will be made in this case before the end of 180 days. If this period is coming to a close and a decision has not been made on your case, you will automatically receive an extension within 60 days of the ending date.

**PLEASE NOTE: ESTABLISHING A PRIMA FACIE CASE FOR CLASSIFICATION UNDER THE SELF-PETITIONING PROVISIONS OF THE VIOLENCE AGAINST WOMEN ACT DOES NOT NECESSARILY MEAN THAT YOUR PETITION WILL BE APPROVED.**

**EXPIRATION DATE: August 24, 2026**

VSCI360VSCVAW000037337936 (COURTESY COPY)

www.uscis.gov

February 25, 2026



U.S. Department of Homeland Security
U.S. Citizenship and Immigration Services
38 River Road
Essex Junction, VT 05479-0001



**U.S. Citizenship and Immigration Services**

SRIJANI CHATTERJEE
ZOHAR LAW PLLC
c/o GADI ZOHAR
200 VESEY ST STE 24132
NEW YORK, NY 10281

RE: SRIJANI CHATTERJEE
I-360, Petition for Amerasian, Widow(er), or Special
Immigrant

## PRIMA FACIE DETERMINATION

**Receipt Date:** April 17, 2023

The request for an extension of a prima facie case for classification under the self-petitioning
provisions of the Violence Against Women Act has been reviewed and granted.

THIS NOTICE MAY BE USED TO ASSIST YOU IN RECEIVING PUBLIC BENEFITS.

**THIS PRIMA FACIE DETERMINATION IS VALID FOR A PERIOD OF 180 DAYS FROM
THE NOTICE DATE SHOWN ABOVE, AND EXPIRES ON THE DATE INDICATED
BELOW.**

We will send you a written notice as soon as we make a decision on this case. It is not expected that a
final decision will be made in this case before the end of 180 days. If this period is coming to a close
and a decision has not been made on your case, you will automatically receive an extension within 60
days of the ending date.

**PLEASE NOTE: ESTABLISHING A PRIMA FACIE CASE FOR CLASSIFICATION UNDER
THE SELF-PETITIONING PROVISIONS OF THE VIOLENCE AGAINST WOMEN ACT
DOES NOT NECESSARILY MEAN THAT YOUR PETITION WILL BE APPROVED.**

**EXPIRATION DATE: August 24, 2026**

VSCI360VSCVAW000037337936

www.uscis.gov

# EXHIBIT B

VAWA Petiton: Affidavit of Abuse

**VAWA PETITIONER'S AFFIDAVIT OF ABUSE**

I met Ronick Sanon, my husband, in February 2021 online. He was 25 years old when we first met and an American citizen of Indian ethnicity and heritage. He is an investor at a hedge fund and as I was working in private finance at the time, we shared a lot of common interests (i.e. the stock market). We also shared interests outside of work like travel, food, and movies. I was very physically attracted to Ronick – he has brunette hair, green eyes, and is a tall man. Just my type.

We proceeded to get to know each other from February 2021 through March 2021, and on 5th March 2021, Ronick flew to London from New York City to meet me for the first time. We first met at Heathrow Airport in London when he landed from New York, and I had rented us an apartment in London for us to move into. We never even thought to book a hotel, we knew we would be living together from the get-go. The decision to do so was confirmed because when we met for the first time, we had instant chemistry. We moved in together in London till April 2021 when Ronick had to return to the United States. I then flew to the United States in May 2021 to visit him and meet his family.

I first met his family at his sister's college graduation in Rochester, New York in June 2021. We continued to fall irrevocably in love with each other and I decided then that I would have to abandon my visitor visa to remain with him. We moved to Miami where Ronick had rented an apartment for us for the month, and we spent that month in bliss together. We would take morning and night walks by the beach, go out dancing late into the night in Little Havana, cook together, laugh together. Being together was just as easy and natural as it had been when Ronick had visited me in London.

Ronick proposed to me one night as we were eating dinner on our balcony in Miami. It was a very natural proposal, there was no ring at the time and I did not question that because he said I would pick out a ring I liked later on. It was an instant yes for me, I just knew he was the one because love had never felt so easy. We decided that we could not bear to be apart and we envisioned a lifetime together, so we tied the knot in a court ceremony in Ronick's hometown – Rochester, New York - on 18th July 2021. It was an intimate civil ceremony for just us, and we celebrated with close family afterwards. We planned to do a big wedding with the extended families on a later date down the line. We signed a lease together for an apartment in Manhattan in July 2021. The address was Apartment 2C, 301 W 57th St, New York, NY, 10019. I sourced the majority of our furniture on Facebook Marketplace and Ronick and I went to go pick it up from the different sellers.

We continued to live together in married life and our first few months were nothing short of blissful. We spent time with each other's family and friends. For instance, Ronick's parents and younger siblings lived in Rochester, New York – a 5-hour car ride from Manhattan. So on at least one weekend per month, Ronick and I would rent a car and drive up to spend the weekend with them. We would stay at his mom's, Micky Suri's, and take his younger siblings – Neal Sanon, Mila Sanon, and Neera Sanon – out for shopping, food, and sightseeing. We

would also visit his maternal grandfather at the elderly citizen home where he resides.

I grew accustomed to American lifestyle and living in New York City, we created our own world that worked perfectly for us. However, a few months after marriage, it was clear that Ronick had financial problems that he wouldn't share with me no matter how hard I tried to get him to open up and be transparent about what these problems were. We kept getting intimidating creditors' letters, loan letters, debt letters through the door but he would physically and aggressively snatch the mail from me and not let me have a look at anything.

Despite the fact that he knew that I did not have the right to work in the United States because my marriage-based immigration application was still pending at the time, Ronick put incessant pressure on me to financially contribute to the household. It took the form of degrading, demeaning, and demoralising emotional and psychological abuse as he said things to me like, "You are so worthless, I make 6x what you make. You are lazy and incompetent. You should be contributing equally to the marriage and you just have nothing but excuses about immigration." Initially I thought that he did not understand the issues with immigration faced by a foreign spouse as they awaited their right to work, but soon I realised, it was not so much that he did not understand but more that he did not care. He would put pressure on me, abuse me, and gaslight me for my inability to get higher paying jobs in a country where he knew I did not have the right to work.

He was extremely financially controlling – to the point where despite having a joint account on paper so he could enjoy the spousal tax exemption, he would not let me have access to the joint account mobile application and neither would he give me access to see exactly what was in the account, what transactions were being made, etc. Any time I needed money even for the smallest thing – be it a $10 subway journey or a $5 snack – he would send me multiple messages/call me during the workday to inquire and barrage me about my excessive spending. He would also blame me for his inability to buy me a ring. He would tell me that it was due to me spending any minimal amount of money that he was unable to afford a ring as a symbol of our marriage. The financial, emotional, and psychological abuse became a constant theme in our marriage, it started in September 2021 and never ceased since. This made me feel very unaccomplished, powerless, and useless as a woman. I felt completely depleted and exhausted trying to make him happy while suppressing my own happiness in turn.

The day I opened the mail without his consent was the day the physical abuse began and he punched me square in my stomach. I was winded but I uncovered the reality he had been trying so desperately to hide from me: he was over $150,000 in debt from gambling. He had not told me this before marrying me and had selfishly made me liable for marital debt that I had no idea about when I married him.

Although he apologised for punching me the first time he did so – in writing, with flowers, and for once helping around the house – as the months passed, he grew unapologetic in getting in my face while snarling at me, choking me by grabbing my throat, pinning me down and slapping me, punching me, kicking me. The physical abuse grew worse and worse, because he knew he could get away with it as I did not call the police on him out of love and hope that he

would change. But Ronick did not change, he took my forgiveness for granted, and instead of apologising for every instance of abuse, took to gaslighting me and telling me I deserved it.

He would also complain to his family about our marriage and me, leading to me incurring severe emotional, mental, and psychological abuse. His father, Manish Sanon, started calling me a "cunt" and a "snake" in his communications with others in the family, he also threatened me directly with deportation; his mother, Micky Suri, persistently tried to get Ronick to file for divorce behind my back and also wrote to ICE to try and have me deported from the country; his brother, Deven Sanon, and his brother's wife, Simran Hotchandani-Sanon, explicitly told me not to come to family events and that they wanted to have no relationship with me.

In addition to this exclusion, Deven Sanon and Simran Hotchandani-Sanon, together with Micky Suri, subjected me to sustained verbal abuse, intimidation, and coercive behaviour. Deven Sanon and Simran Hotchandani-Sanon repeatedly called me "fat," "ugly," and a "cougar," and mocked my age and appearance. They also consistently rebuked and belittled my academic and professional qualifications, undermining my confidence and self-worth. They used my immigration status as a tool of control, repeatedly threatening deportation and attempting to intimidate me into submission, including by writing to and calling USCIS in efforts to have me removed from the United States.

By virtue of my marriage, I became involuntarily privy to unlawful conduct within the family. I was exposed to customs fraud schemes conducted by Deven Sanon and Simran Hotchandani-Sanon involving the movement of wholesale goods across Canada, the United States, and Belize. I refused to participate in any such conduct. Simran Hotchandani-Sanon explicitly represented that her family had access to corrupt customs officials in Belize who could facilitate the improper movement of goods.

This conduct was actively supported and enabled by Micky Suri, who assisted Deven Sanon and Simran Hotchandani-Sanon in packaging and preparing wholesale goods for cross-border transport, reinforcing and legitimising this conduct within the family.

Simran Hotchandani-Sanon also discussed and pursued immigration strategies aimed at exploiting perceived loopholes in Canadian and United States systems, including pressuring for marriage-based arrangements within the family. She expressed hostility towards me following my marriage to Ronick, as my marriage had taken place despite her own efforts to secure similar arrangements.

Ronick would abandon me for events like family weddings, Thanksgiving, Christmas, and go spend it upstate with his whole family while leaving me behind in our apartment in the city to spend the holidays alone. He also started to constructively abandon me and would make demeaning comments about my body, tell me I am fat, refuse to be intimate with me. This damaged my self-esteem and confidence, and I became very depressed. I sought therapy for myself and even tried to get him to attend couples therapy with me, but he was arrogant and apathetic.

In September 2023, I discovered that I had an overgrown uterine fibroid that would require a major surgical removal. I told Ronick and his first words to my anxiety and worry about surgery were, "there is always something with you, this is going to be expensive." I was shattered not to have any emotional support from my own husband.

In November 2023, we learned of a positive pregnancy test, which later turned out to be a life-threatening ectopic pregnancy. On 23rd December 2023, I was served with divorce papers while alone. Ronick left for holiday with his family.

I had to cancel my travel for surgery and later underwent emergency surgery alone, including removal of the ectopic pregnancy and suffering a third-degree burn as a complication.

Following surgery, Ronick blocked me and abandoned me entirely.

This marriage has left me feeling completely untrusting of love and relationships. I suffer from anxiety, depression, panic attacks, and emotional trauma. I experience sleeplessness and severe distress.

I want to rebuild my life in the United States independently and move forward safely.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

_____

Srijani Chatterjee


Date: __March 30, 2023_____

# EXHIBIT C

Affidavit of Riva Ganguly Das

Riva Ganguly Das, being duly sworn, deposes and says:

I am the Secretary in the Ministry of External Affairs for the Government of India, I am the former Indian Consul-General to the State of New York, I am the former Indian Ambassador to Romania, and I am the former Indian Ambassador to Albania and Moldova.

I am the Godmother of Srijani Chatterjee, the Petitioner in this domestic violence hearing, and am personally familiar with all the facts and circumstances set forth herein.

I submit this affidavit in support of Srijani Chatterjee's (the Petitioner's) application for an Order of Protection against Micky Suri (the Defendant):

1.  I reside at 61 W 62nd St, New York, NY, 10023.

2.  I have known Srijani Chatterjee since 1993.

3.  The parties have known each other since 2021.

4.  Micky Suri is Srijani Chatterjee's mother-in-law.

5.  Due to the positions, I have held in my political career for the Indian government, I know of Arun Hotchandani, the father of the Petitioner's sister-in-law, Simran Hotchandani. Arun Hotchandani currently serves as the Honorary Consul of India to Belize.

6.  Including but not limited to: Arun Hotchandani, the father of the Petitioner's sister-in-law; Bindu Hotchandani, the mother of the Petitioner's sister-in-law; and Simran Hotchandani, the Petitioner's sister-in-law, are under investigation by the Indian government and the US government agencies for customs fraud, immigration fraud, cash embezzlement, and black money dealings since 2010.

7.  Numerous complaints from institutions and individuals at federal, state, and national level for customs fraud, immigration fraud, cash embezzlement, and black money dealings have been received by the Indian government and US government agencies against: Arun Hotchandani; Bindu Hotchandani; and Simran Hotchandani since 2010.

8.  Upon information and belief, Micky Suri and her family members: Deven Sanon and Manish Sanon have been accomplice in aiding and abetting multiple instances of complaints and subsequent charges made against Simran Hotchandani and her family.

9.  In April 2022, upon learning of Srijani Chatterjee's marriage to Micky Suri's son, Ronick Sanon, I personally cautioned Srijani Chatterjee to maintain a distance from and stay alert of her sister-

in-law, Simran Hotchandani and the Hotchandani family under criminal investigation for customs fraud, immigration fraud, cash embezzlement, and black money dealings since 2010.

10. In April 2022, upon learning of Srijani Chatterjee's marriage to Micky Suri's son, Ronick Sanon, I informed Srijani Chatterjee that her legal career could be in jeopardy for association with her sister-in-law, Simran Hotchandani and the Hotchandani family under criminal investigation for customs fraud, immigration fraud, cash embezzlement, and black money dealings since 2010.

11. As a senior member of the foreign dignitary of the Indian government who oversees verified complaints and investigations, I confirm that Srijani Chatterjee has not had and continues to have no involvement in neither the complaints against and nor the criminal investigation of members of the Hotchandani family by the Indian government and US government agencies since 2010.

12. Srijani Chatterjee qualifies as a vulnerable witness due to the knowledge she possesses about the unlawful conduct of her soon to be ex-marital family.

13. On 8th February 2023, my own colleagues within USCIS contacted me and informed me that Micky Suri and her family members: Ronick Sanon, Deven Sanon, Simran Hotchandani, and Manish Sanon, continue to harass USCIS with baseless accusations and unmeritorious lies against Srijani Chatterjee in an attempt to deport the Petitioner from the US.

14. On 5th May 2023, my own colleagues within USCIS contacted me and informed me that Micky Suri and her family members: Ronick Sanon, Deven Sanon, Simran Hotchandani, and Manish Sanon, continue to harass USCIS with baseless accusations and unmeritorious lies against Srijani Chatterjee in an attempt to deport the Petitioner from the US.

15. On 11th September 2023, my own colleagues within USCIS contacted me and informed me that Micky Suri and her family members: Ronick Sanon, Deven Sanon, Simran Hotchandani, and Manish Sanon, continue to harass USCIS with baseless accusations and unmeritorious lies against Srijani Chatterjee in an attempt to deport the Petitioner from the US.

16. Including but not limited to the most recent incident of deportation threats and pursuit of deportation threats by Micky Suri, on 11th September 2023, multiple USCIS representatives in State of New York that I personally work with have informed me directly that Micky Suri has placed several calls from Micky Suri's personal number - +1-585-750-7161 - and sent two emails from Micky Suri's personal email ID – sanoncpa@gmail.com - to character assassinate and defame Srijani Chatterjee, demanding to have Srijani Chatterjee deported from the US.

17. The calls and emails placed and sent by Micky Suri from her personal number and email address to the USCIS amount to serious harassment, deportation threats, and pursuit of deportation threats by Micky Suri against Srijani Chatterjee.

18. Micky Suri is a deranged, devious, and dangerous woman who is both relentless and unyielding in her threat to deport and pursuit of her threat to deport Srijani Chatterjee from the US.

19. Srijani Chatterjee is in immediate danger from Micky Suri and her family members: Ronick Sanon, Deven Sanon, Simran Hotchandani, and Manish Sanon.

20. Micky Suri is a notoriously cruel, cunning, deceitful, and dangerous woman with a relentless vendetta against the Petitioner's life and future.

21. Micky Suri and her family members: Ronick Sanon, Deven Sanon, Simran Hotchandani, and Manish Sanon, continue to defame and spread baseless lies about the Petitioner's conduct and character to members of society as well as to judicial and government officials in the US.

22. Micky Suri's behavior  has been flagged and cautioned, and her baseless claims and accusations against Srijani Chatterjee have been rejected by judicial and government officials in the US.

23. Micky Suri has been and warned by government officials not to abuse the system and to cease from her immaterial lies and substance-lacking accusations against Srijani Chatterjee.

24. Srijani Chatterjee is now a single immigrant woman in the US due to her abusive marriage, the threats of deportation, and the pursuit of deportation by Micky Suri and her family members: Ronick Sanon, Deven Sanon, Simran Hotchandani, and Manish Sanon.

25. Srijani Chatterjee has qualified with notable merit in the law of the United Kingdom and has been a law-abiding citizen of immaculate character and a non-existent criminal record across several countries and continents in her 31 years.

26. Srijani Chatterjee has been awarded the O-1 visa by the US government in 2016 for her exceptional achievements in law academia from the prestigious University of Edinburgh, where she graduated at the top of her class from Edinburgh School of Law.

27. Srijani Chatterjee has had meritorious right to remain and reside in the United States by virtue of her O-1 visa that was granted in 2016, long before the marriage and acquaintance of Srijani Chatterjee with Micky Suri's son, Ronick Sanon in 2021.

28. I attest to the honorable character, nobility, and justice of Srijani Chatterjee. Srijani Chatterjee has and continues to be an inspiration to her peers in academia, and she has always held her duty to justice as first and foremost.

29. Upon information and belief, Micky Suri has inflicted severe elder abuse on her own 87-year-old father, Darshan Suri, in manipulating false declarations against his health to obtain his power of attorney against his will.

30. Upon information and belief, Micky Suri has abandoned and neglected her own 87-year-old father, Darshan Suri for months on end while purporting to be his legal guardian.

31. Upon information and belief, Micky Suri and her family members: Deven Sanon, Simran Hotchandani, Serena Sanon, and Neal Sanon broke into Micky Suri's 87-year-old father, Darshan Suri's residence and proceeded to steal, hack, and tamper with his personal devices of communication while the elderly gentleman was suffering from COVID-19.

32. Darshan Suri is an 87-year-old senior citizen and Micky Suri's own father, yet Micky Suri's cruelty towards even the elderly she is related to by blood is unbound.

33. Srijani Chatterjee is a qualified British lawyer who performed her duty to the law and justice in helping Darshan Suri against the elderly abuse inflicted upon him by Micky Suri As a result, Srijani Chatterjee is now the directed target of abuse by Micky Suri.

34. Upon information and belief, Micky Suri has directly abused Srijani Chatterjee's safety and well-being through life threats of poison.

35. Micky Suri is the cruel mother-in-law who knows that her daughter-in-law is alone in the US with her own family continents away, and the Defendant has only ever tried to leverage the distance to commit atrocious acts of abuse against the Petitioner.

36. Micky Suri is the cruel mother-in-law who has abandoned her daughter-in-law when she was suffering an ectopic pregnancy and was undergoing the surgical removal of a life-threatening pregnancy on her own in February 2023.

37. Micky Suri's denial of Srijani Chatterjee's ectopic pregnancy does not absolve its truthful occurrence as Micky Suri was neither party to the marriage and consequent marital life as shared between Srijani Chatterjee and her son, Ronick Son, and nor is Micky Suri adequately educated and trained as a medical professional.

38. Micky Suri is a woman of despicable, dishonest, and criminal character to undermine and diminish Srijani Chatterjee's traumatic medical experience with a life-threatening ectopic preganncy and its removal on 6th February 2023.

39. Upon information and belief, Micky Suri forbade her son, Srijani Chatterjee's husband, to be there for Srijani Chatterjee as she underwent surgery for a life-threatening ectopic pregnancy on her own on 6th February 2023.

40. Micky Suri's cruelty towards Srijani Chatterjee, a young woman old enough to be her own child, is unbound.

41. Contrary to any and all maliciously false claims against Srijani Chatterjee by Micky Suri, Srijani Chatterjee is a highly skilled immigrant to the US who has been in receipt of the O-1 visa from the US government for extraordinary ability and achievement. Srijani Chatterjee is of honest, meritorious, and highly capable character.

42. Srijani Chatterjee urgently and immediately requires the support and protection of the US legal system of justice to ensure her continued safety as a resident of the US.

43. I fear for Srijani Chatterjee's life and safety due to the threats of poison and deportation, as well as the pursuit of threats of deportation made against the Petitioner by Micky Suri and her family members: Ronick Sanon, Deven Sanon, Simran Hotchandani, and Manish Sanon.

WHEREFORE, I respectfully urge the Court to award Srijani Chatterjee an Order of Protection against Micky Suri in this pending domestic violence hearing. Urging that the Court award Srijani Chatterjee relief as the Court may deem just and proper.

RIVA GANGULY DAS

Sworn to before me this day

12th day of September 2023

VASHU PATEL
NOTARY PUBLIC, STATE OF NEW YORK
Registration No. 01PA6334587
Qualified in Kings County
Commission Expires 12/21/2023

Notary Public