*** Filed ***
06:37 PM, 14 Apr, 2026
U.S.D.C., Eastern District of New York

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| DEVEN SANON and SIMRAN HOTCHANDANI,<br><br>  Plaintiffs,<br><br>  -against-<br><br>SRIJANI CHATTERJEE, JOHN DOES 1-10, and JANE DOES 1-10,<br><br>  Defendants. | *rec. in pdrive 4/16/26 rg<br><br>Civil Action No.:<br>**1:26-cv-00580 (AMD) (VMS)** |

**NOTICE OF MOTION**

PLEASE TAKE NOTICE that Defendant Srijani Chatterjee, proceeding pro se, will move this Court before the Honorable Ann M. Donnelly, United States District Judge, at the United States District Court for the Eastern District of New York, at a date and time to be determined by the Court, for an Order pursuant to Federal Rules of Civil Procedure 26(c) and 45(d)(3):

1. Quashing the subpoena issued to Stripe, Inc. (**Exhibit D**);

2. Quashing the subpoena issued to Allison Viverette (**Exhibit E**);

3. Quashing or, in the alternative, substantially narrowing the subpoenas issued to Starry Inc. (**Exhibit A**), Meta Platforms, Inc. (**Exhibit B**), and Google LLC (**Exhibit C**);

4. Striking Plaintiffs' First Set of Interrogatories and Plaintiffs' First Set of Requests for Production of Documents (**Exhibits N and O**) as exceeding the scope of the Court's April 10, 2026 Order and as premature;

5. Entering a protective order pursuant to Rule 26(c) prohibiting disclosure of Defendant's identifying, location, device, and financial information, consistent with VAWA protections;

1

Case No. 1:26-cv-00580 (AMD) (VMS)

6. Staying Defendant's obligation to respond to the interrogatories and document requests pending resolution of this motion;

7. Imposing sanctions on Plaintiffs' counsel under Rule 26(g)(3); and

8. Granting such further relief as the Court deems just and proper.

PLEASE TAKE FURTHER NOTICE that this motion is based upon the accompanying Memorandum of Law, the Declaration of Srijani Chatterjee, the exhibits annexed thereto, and all prior proceedings herein.

2

Case No. 1:26-cv-00580 (AMD) (VMS)

**DEFENDANT'S CONSOLIDATED MOTION TO QUASH
THIRD-PARTY SUBPOENAS, STRIKE DISCOVERY REQUESTS,
AND FOR PROTECTIVE ORDER**

**MEMORANDUM OF LAW IN SUPPORT**

**TABLE OF CONTENTS**

**PRELIMINARY STATEMENT**

**I.  THE VIOLENCE AGAINST WOMEN ACT PROHIBITS THE DISCOVERY SOUGHT BY PLAINTIFFS**

**II.  PROCEDURAL BACKGROUND**

The Meet-and-Confer Process

**III.  LEGAL STANDARD**

**IV.  ARGUMENT**

A. The Subpoenas Exceed the Scope of the Court's April 10, 2026 Order

A.1. Plaintiffs Attached a Non-Operative Court Order to the Meta and Google Subpoenas

B. The Subpoena to Allison Viverette (**Exhibit E**) Must Be Quashed

C. The Stripe Subpoena (**Exhibit D**) Must Be Quashed in Its Entirety

D. The Starry, Google, and Meta Subpoenas Are Overbroad

D.5. The Stored Communications Act Bars Content Disclosure via Civil Subpoena

E. The Interrogatories and Document Requests Must Be Struck

F. The Subpoenas Duplicate, Expand, and Circumvent Discovery Previously Narrowed in State Court

G. Plaintiffs' Counsel's Conduct During the Meet-and-Confer Process Demonstrates a Pattern of Overreaching

H. Sanctions Are Warranted Under Rule 26(g)(3)

**V.  RELIEF REQUESTED**

**VI.  CONCLUSION**

3

Case No. 1:26-cv-00580 (AMD) (VMS)

## TABLE OF AUTHORITIES

**Cases**

*Arista Records LLC v. Doe 3*, 604 F.3d 110 (2d Cir. 2010)

*Cazorla v. Koch Foods of Miss., LLC*, 838 F.3d 540 (5th Cir. 2016)

*Chen-Oster v. Goldman, Sachs & Co.*, 293 F.R.D. 547 (S.D.N.Y. 2013)

*Concord Boat Corp. v. Brunswick Corp.*, 169 F.R.D. 44 (S.D.N.Y. 1996)

*Crispin v. Christian Audigier, Inc.*, 717 F. Supp. 2d 965 (C.D. Cal. 2010)

*Langford v. Chrysler Motors Corp.*, 513 F.2d 1121 (2d Cir. 1975)

*Mancia v. Mayflower Textile Servs. Co.*, 253 F.R.D. 354 (D. Md. 2008)

*Night Hawk Ltd. v. Briarpatch Ltd., L.P.*, No. 03-cv-1382, 2003 WL 23018833 (S.D.N.Y. Dec. 23, 2003)

*Palazzo ex rel. Delmage v. Corio*, 232 F.3d 38 (2d Cir. 2000)

*Seattle Times Co. v. Rhinehart*, 467 U.S. 20 (1984)

*Theofel v. Farey-Jones*, 359 F.3d 1066 (9th Cir. 2004)

**Statutes**

8 U.S.C. § 1367

8 U.S.C. § 1367(a)(1)

8 U.S.C. § 1367(a)(2)

18 U.S.C. § 2702

18 U.S.C. § 2702(a)

**Rules**

Fed. R. Civ. P. 26(b)(1)

Fed. R. Civ. P. 26(c)(1)

Fed. R. Civ. P. 26(d)(1)

Fed. R. Civ. P. 26(g)

Fed. R. Civ. P. 45(d)(1)

Fed. R. Civ. P. 45(d)(3)(A)

Local Civil Rule 7.1

Local Civil Rule 37.3

**Legislative Materials**

H.R. Rep. No. 109-233 (2005)

**Other Authorities**

DHS Policy Instruction 002-02-001, VAWA Confidentiality Protections

## PRELIMINARY STATEMENT

This motion challenges <u>a sweeping and bad-faith campaign of discovery abuse</u>. Plaintiffs have served five third-party subpoenas and two sets of party discovery requests that, individually and collectively, far exceed the scope of discovery authorized by this Court, violate the confidentiality protections afforded to victims of domestic violence under the Violence Against Women Act ("VAWA"), and reflect a deliberate pattern of overreaching and harassment by Plaintiffs' counsel that has persisted through the meet and-confer process.

Defendant is a victim of domestic violence. She has filed a petition under VAWA and has received prima facie approval from United States Citizenship and Immigration Services ("USCIS"). See **Exhibit P** (USCIS Prima Facie Determination). She has also submitted a sworn affidavit of abuse in support of that petition. See **Exhibit Q** (Affidavit of Abuse). Federal law explicitly prohibits the disclosure of information relating to VAWA petitioners for the purpose of locating or identifying them in connection with enforcement or litigation initiated by their abusers. See 8 U.S.C. § 1367.

<u>Plaintiffs in this action are the very individuals identified in Defendant's VAWA petition as her abusers.</u> The discovery they now seek - including Defendant's GPS coordinates, residential address, device identifiers, complete financial records, and the personal communications of her sublessor - is precisely the type of information that VAWA was enacted to protect from disclosure. The breadth, timing, and manner of these requests leave no reasonable doubt that they are designed not to advance any legitimate litigation objective, but to unmask, locate, surveil, and intimidate a domestic violence victim. Plaintiffs' counsel then compounded this abuse by weaponizing the meet-and-confer process itself as a vehicle for coercion - demanding immediate compliance under threat of sanctions, insisting on recording the conference without consent, and conditioning any dialogue on Defendant's prior capitulation - all tactics designed to pressure a

Case No. 1:26-cv-00580 (AMD) (VMS)

pro se VAWA victim into surrendering protected information outside the safeguard of judicial oversight. This Court should not permit it.

Defendant respectfully requests that this Court quash the subpoenas, strike the interrogatories and document requests in their entirety, enter a protective order, stay any obligation to respond to the interrogatories and document requests pending resolution of this motion, and impose sanctions on Plaintiffs' counsel under Rule 26(g)(3) for certifying discovery requests that are unreasonable, disproportionate, and interposed for an improper purpose.

## I. THE VIOLENCE AGAINST WOMEN ACT PROHIBITS THE DISCOVERY SOUGHT BY PLAINTIFFS

The Violence Against Women Act, codified in relevant part at 8 U.S.C. § 1367, establishes an absolute prohibition on the disclosure of information relating to VAWA petitioners. Section 1367(a)(2) provides that, except in specified narrow circumstances, no officer or employee of the Department of Homeland Security, the Department of Justice, or the Department of State - and no other official or employee of a Federal, State, or local government agency - may "permit use by or disclosure to anyone" of any information relating to a VAWA beneficiary. 8 U.S.C. § 1367(a)(2).

The statute's protections are sweeping and unambiguous. Section 1367(a)(1) specifically provides that information maintained by the Attorney General or DHS concerning VAWA beneficiaries may not be used "to make an adverse determination of admissibility or deportability" or "for any other purpose." 8 U.S.C. § 1367(a)(1)(B) (emphasis added). Section 1367(a)(2) extends this prohibition to disclosure, barring the "use by or disclosure to anyone" of such information. Critically, the statute's exceptions are exhaustive and narrowly drawn. None of them authorizes disclosure in response to civil discovery by the very individuals identified as the petitioner's abusers.

6

The legislative purpose of § 1367 is clear and directly applicable here. Congress enacted VAWA's confidentiality provisions to prevent abusers from using the legal system and government databases as instruments to locate, identify, and further victimize their targets. See H.R. Rep. No. 109-233, at 120 (2005) ("This confidentiality provision is essential to the purpose of VAWA in order to ensure that abusers and criminals cannot use the immigration system against their victims."). The Department of Homeland Security's own guidance reinforces this purpose, stating that VAWA confidentiality protections exist to ensure that "abusers and perpetrators of crimes cannot use the immigration enforcement system as a tool to further control, harass, intimidate, and harm their victims." See DHS Policy Instruction 002-02-001, VAWA Confidentiality Protections.

Here, Defendant has received prima facie approval of her VAWA petition (**Exhibit P**) confirming that USCIS has determined that her petition sets forth a prima facie case for VAWA relief. Her sworn Affidavit of Abuse (**Exhibit Q**) identifies Plaintiffs Deven Sanon and Simran Hotchandani as her abusers. The discovery Plaintiffs now seek - Defendant's residential address, location data, device identifiers, financial records, and the personal information and communications of her sublessor - is designed to identify and locate a VAWA petitioner at the behest of her identified abusers. This is the precise harm that § 1367 was enacted to prevent.

While § 1367 applies directly to government agencies, courts have recognized its broader protective policy in civil proceedings. See *Cazorla v. Koch Foods of Miss., LLC*, 838 F.3d 540, 553-54 (5th Cir. 2016) (acknowledging VAWA/U-visa confidentiality protections in the civil discovery context and remanding for the district court to fashion protective measures). This Court has the authority - and, Defendant respectfully submits, the obligation - to enforce the policies underlying § 1367 by entering a protective order under Rule 26(c) that prevents

Case No. 1:26-cv-00580 (AMD) (VMS)

Plaintiffs from obtaining, through civil discovery, the very information that federal law prohibits government agencies from disclosing.

Here, the relevance of VAWA protections is not limited to a single subpoena or discovery request. It pervades this entire dispute. Every subpoena and every set of interrogatories at issue seeks, at its core, to identify and locate a domestic violence victim for the benefit of her abusers. The Court should evaluate all of the challenged discovery in light of this overarching federal policy.

## II. PROCEDURAL BACKGROUND

This defamation action was filed in January 2026. Defendant has moved to dismiss. The Court's February 9, 2026 Order scheduled an initial conference and directed the parties to complete a Joint Proposed Case Management Plan. See **Exhibit F**.

The Court's April 10, 2026 Order (**Exhibit G**) expressly limits discovery at this stage:

> [D]iscovery as to two categories of items will proceed: first, non-party discovery from social media entities and internet service providers, and second, jurisdictional discovery, both pertaining to service of process and diversity jurisdiction. All other discovery is currently stayed.

Prior to this Federal action, Plaintiffs pursued materially similar third-party discovery in a parallel state court proceeding in the Supreme Court of the State of New York, County of Bronx (Index No. 818359/2025E). In that proceeding, Plaintiffs sought only "non-content basic subscriber information ('BSI')" from Meta, Google, and Starry, under court-supervised stipulated orders providing 21 days' notice to affected users. See **Exhibits H-J** (Google, Meta, and Izower Affirmations). Defendant appeared under the pseudonym "Jane Doe" and filed motions to quash. After a hearing on February 2, 2026, the state court stayed all discovery and granted Defendant designation as "Jane Doe," recognizing her status as a domestic violence victim with VAWA

8

prima facie approval. See **Exhibit K**. Shortly thereafter, rather than proceed under the state court's protective framework, Plaintiffs filed Stipulations of Discontinuance without prejudice. See **Exhibits L-M**.

Significantly, having discontinued the state court proceeding where they were limited to basic subscriber information, Plaintiffs have now issued subpoenas in this Court seeking exponentially broader discovery from the same entities - plus a new subpoena to Defendant's sublessor and a payment processor (Stripe) - alongside party interrogatories and document requests that far exceed any jurisdictional purpose.

**The Meet-and-Confer Process**

Defendant attempted in good faith to resolve these disputes through the meet-and-confer process required by Local Civil Rule 37.3 and this Court's Individual Practice Rules. The correspondence is attached as **Exhibit R**.

Plaintiffs' counsel served the interrogatories and document requests at 6:39 p.m. on April 13, 2026. Replete with various errors (**Exhibit R**). For instance, in doing so, counsel addressed Defendant as "Mr. Chatterjee," misgendering her. When Defendant raised objections by email fifteen minutes later, at 6:54 p.m., counsel curtly instructed her to "[p]lease object pursuant to the Federal Rules of Civil Procedure and not by email." Id. at 7:11 p.m. Defendant served formal objections and responses seven minutes later, at 7:18 p.m., and requested a meet-and-confer by Zoom within 24-48 hours. Despite receiving these formal objections the same evening, Plaintiffs' counsel responded at 10:40 p.m. with a lengthy letter characterizing Defendant's responses as "deficient," threatening a motion to compel with fees and costs, demanding supplemental responses and a privilege log, and announcing that the meet-and-confer conference would be recorded and that "[p]articipation in the conference will be understood as consent to such

Case No. 1:26-cv-00580 (AMD) (VMS)

recording." Id. Counsel further announced that a non-appearing attorney, Kaivalya Rawal, would join the call alongside co-counsel Cali Madia.

At 11:09 p.m., Defendant (a) declined to consent to recording, (b) objected to the participation of non-appearing counsel given the VAWA-related sensitivity of the matter, and (c) reiterated her availability to meet by Zoom within 24-48 hours. At 11:49 p.m., Plaintiffs' counsel agreed to forgo recording but insisted that Rawal would "attend in a consulting capacity" and proposed meeting on Thursday or Friday - outside the 24-48 hour window Defendant had requested. At 12:21 a.m. on April 14, Defendant noted that Thursday or Friday fell outside the 24-48 hour window and proposed Tuesday or Wednesday instead, reiterating that participation should be limited to counsel of record.

Plaintiffs' counsel then abandoned any pretense of good-faith engagement. At 4:42 a.m. on April 14, counsel wrote: "Prior to meeting with you about discovery, I need your specific objections to the interrogatories and document demands. Once we receive them, we will review them to determine if we believe they have any merit." Id. This email conditioned any meet-and-confer on Defendant's prior service of formal responses - notwithstanding that counsel had already received Defendant's formal objections on the evening of April 13 and that Defendant's 30-day response period under the Federal Rules had not yet elapsed. At 10:50 a.m., Defendant responded that she did not agree the meet-and-confer was contingent on prior service of formal responses, again noting the unexpired 30-day deadline and offering availability within the originally requested timeframe. Counsel continued to copy Kaivalya Rawal on all correspondence despite Defendant's repeated objections, prompting Defendant to send a separate email at 10:57 a.m. specifically requesting that non-appearing individuals be removed from the correspondence.

10

Case No. 1:26-cv-00580 (AMD) (VMS)

As Defendant pointed out in her correspondence, the Federal Rules afford her 30 days to serve responses and objections, and that deadline had not elapsed. Plaintiffs' counsel's insistence on pre-compliance as a condition of meeting is inconsistent with the purpose of the meet-and-confer obligation, which contemplates that parties will negotiate in good faith to narrow or resolve disputes before seeking judicial intervention - not that one party will demand capitulation as a precondition to dialogue.

Viewed in its totality, <u>Plaintiffs' counsel's conduct during the meet-and-confer process constitutes a coercive strategy to unmask a VAWA-protected victim</u>. Every element of counsel's approach - misgendering Defendant, demanding immediate compliance with discovery that far exceeds the Court's order, threatening sanctions within hours of service, insisting on recording without consent, introducing non-appearing counsel over explicit objection, and conditioning dialogue on pre-compliance - was calculated to pressure a pro se domestic violence victim into surrendering protected information without the safeguard of judicial oversight. <u>The meet-and-confer process was not used as the Federal Rules intend, as a vehicle for good-faith negotiation, but was instead weaponized as an instrument of the very intimidation and coercion that VAWA was enacted to prevent.</u>

### III. LEGAL STANDARD

Under Federal Rule of Civil Procedure 45(d)(3)(A), a court "must quash or modify a subpoena" that "requires disclosure of privileged or other protected matter, if no exception or waiver applies," or that "subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(iii)-(iv). Rule 26(c)(1) authorizes protective orders where necessary to protect a party from "annoyance, embarrassment, oppression, or undue burden or expense," including orders "forbidding the disclosure or discovery" and "requiring that . . . confidential . . . information not be revealed or

11

Case No. 1:26-cv-00580 (AMD) (VMS)

be revealed only in a specified way." Fed. R. Civ. P. 26(c)(1)(A), (G). The Supreme Court has recognized that the "power of the court to protect the individual litigant in the litigation context is essential to the proper administration of justice." Seattle Times Co. v. Rhinehart, 467 U.S. 20, 35 (1984). Where discovery threatens to expose sensitive personal information to parties with a demonstrated motive to misuse it, protective orders are not merely appropriate - they are essential.

Discovery must be "proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Courts in this Circuit routinely quash subpoenas that are overbroad, seek irrelevant information, or impose an undue burden. See Night Hawk Ltd. v. Briarpatch Ltd., L.P., No. 03-cv-1382, 2003 WL 23018833, at *8 (S.D.N.Y. Dec. 23, 2003); Concord Boat Corp. v. Brunswick Corp., 169 F.R.D. 44, 48 (S.D.N.Y. 1996). Where a court has expressly limited the scope of discovery, requests exceeding those limitations are improper. See Chen-Oster v. Goldman, Sachs & Co., 293 F.R.D. 547, 553 (S.D.N.Y. 2013).

Courts require that discovery be narrowly tailored where it implicates the identification of anonymous individuals online. See Arista Records LLC v. Doe 3, 604 F.3d 110, 118-19 (2d Cir. 2010). A party has standing to challenge third-party subpoenas where it claims a personal right or privilege. See Langford v. Chrysler Motors Corp., 513 F.2d 1121, 1126 (2d Cir. 1975).

## IV. ARGUMENT

### A. The Subpoenas Exceed the Scope of the Court's April 10, 2026 Order

The April 10 Order (**Exhibit G**) permits only: (1) non-party discovery from social media entities and internet service providers, and (2) jurisdictional discovery - both "pertaining to service of process and diversity jurisdiction." All other discovery is stayed. Requests exceeding the Court's order are per se improper. See Chen-Oster, 293 F.R.D. at 553.

12

Case No. 1:26-cv-00580 (AMD) (VMS)

The information necessary to address service and jurisdiction is narrow: a name and current address for service; information bearing on domicile at the time of filing for diversity jurisdiction. See *Palazzo ex rel. Delmage v. Corio*, 232 F.3d 38, 42 (2d Cir. 2000) ("[D]iversity of citizenship is assessed at the time of the filing of the complaint."). Neither purpose requires GPS coordinates, cell tower data, device identifiers, complete transaction histories, credit card numbers, social media content, enforcement records, or the personal communications of Defendant's sublessor.

Yet that is what the subpoenas collectively demand. The following categories have no connection to service or jurisdiction:

- GPS coordinates, Wi-Fi access point data, cell tower data, and Bluetooth beacon data (Meta **Exhibit B**, Req. 10-11; Google **Exhibit C**, Req. 10-11)

- Device identifiers including IMEI, MEID, serial numbers, MAC addresses, advertising IDs (Meta **Exhibit B**, Req. 8-9; Google **Exhibit C**, Req. 8-9; Starry **Exhibit A**, Req. 10)

- Complete IP address logs for all sessions over six years (Meta **Exhibit B**, Req. 6-7; Google **Exhibit C**, Req. 5-7; Starry **Exhibit A**, Req. 9)

- Full credit card numbers, dates of birth, and complete transaction histories (Stripe **Exhibit D**, Req. 4-12)

- Content of over 100 Facebook posts and all Instagram content (Meta **Exhibit B**, Req. 15-16)

- Internal enforcement records, community standards violations, and automated detection logs (Meta **Exhibit B**, Req. 17-19)

- All linked, related, or recovery accounts across all platforms, and all data for each (Meta **Exhibit B**, Req. 12-14; Google **Exhibit C**, Req. 12-14)

13

Case No. 1:26-cv-00580 (AMD) (VMS)

- Security questions and answers (Meta **Exhibit B**, Req. 1; Google **Exhibit C**, Req. 1)

- Personal communications and photographs of Defendant's sublessor (Viverette **Exhibit E**, Req. 3, 6, 8)

### A.1. Plaintiffs Attached a Non-Operative Court Order to the Meta and Google Subpoenas

The Meta and Google subpoenas attach a court order that is not the operative April 10, 2026 Order governing discovery. <u>The attached order omits the critical limitations imposed by this Court.</u> This omission is material: third-party recipients reasonably rely on attached orders to assess the scope of discovery. By attaching a non-operative order, Plaintiffs risk misleading Meta and Google into producing data beyond the authorized scope. The Court should direct that any future subpoenas attach only the operative order.

### B. The Subpoena to Allison Viverette (Exhibit E) Must Be Quashed

Plaintiffs have served a subpoena on Allison Viverette, an individual residing at 189 Penhurst Drive, Pittsburgh, Pennsylvania, who appears to be a person associated with Defendant's residential address. The subpoena demands eight categories of documents, including:

- All leases, rental agreements, and occupancy agreements relating to 214 Atlantic Avenue, Apartment 2B, Brooklyn, New York (Req. 1)

- All documents reflecting payments received from Defendant, including PayPal, Venmo, Zelle, and bank records (Req. 2)

- All communications between Ms. Viverette and Defendant relating to the living arrangement, rent, Defendant's residence, location, or travel, or the receipt of mail or legal papers (Req. 3)

- All communications between Ms. Viverette and any landlord or property manager (Req. 4)

14

- All documents reflecting who resided at the address (Req. 5)

- All documents reflecting Defendant's physical presence at or absence from the address (Req. 6)

- All documents reflecting the receipt of mail or legal papers addressed to Defendant (Req. 7)

- All photographs depicting Defendant, Defendant's personal belongings, or the interior of the apartment (Req. 8)

This subpoena must be quashed for multiple independent reasons.

First, Ms. Viverette is not a "social media entit[y]" or an "internet service provider." The Court's April 10 Order authorizes non-party discovery only from those two categories of entities. A subpoena to an individual - particularly Defendant's sublessor - falls entirely outside the scope of the Court's order.

Notably, unlike the subpoenas to Meta and Google which at least attached a court order (albeit the wrong one, as discussed in Section A.1) - the Viverette subpoena does not attach any court order at all. It was issued without even the pretense of judicial authorization. This omission is telling: Plaintiffs could not attach the April 10 Order because it plainly does not authorize discovery from individuals, and they did not attach the state court order because it has no operative effect in this proceeding. The subpoena was thus issued in a vacuum of authority.

Second, even construed as "jurisdictional discovery," the subpoena is overbroad and seeks information far beyond what is necessary to establish jurisdiction. Requests for "all communications" between Ms. Viverette and Defendant, "all photographs" of Defendant or the interior of her apartment, and documents reflecting Defendant's "physical presence at or absence

15

from" the address are not narrowly tailored to any jurisdictional question. They are an invasive investigation of Defendant's private living arrangements.

Third, and most critically, this subpoena directly implicates the VAWA protections discussed in Section I. It seeks to identify and locate a domestic violence victim through her personal relationships and residential arrangements. Compelling Defendant's sublessor to produce personal communications, payment records, and photographs of Defendant's living space would effectively allow Plaintiffs- Defendant's identified abusers - to surveil Defendant through a third party. This is precisely the kind of abuse of legal process that VAWA was designed to prevent.

Fourth, the subpoena imposes an undue burden on a non-party individual who has no connection to this litigation, demanding production of personal communications, financial records, and photographs. See Fed. R. Civ. P. 45(d)(1) ("A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena.").

## C. The Stripe Subpoena (Exhibit D) Must Be Quashed in Its Entirety

The Stripe subpoena seeks financial and payment data for three specific transactions, demanding twelve categories including complete credit card numbers (Req. 4), account holder's date of birth (Req. 6), full credit card statements (Req. 7), complete transaction histories (Req. 12), and mobile payment identifiers (Req. 11).

Stripe is a payment processor. It is not a "social media entit[y]" or an "internet service provider." The Court's order does not authorize discovery from payment processors. The Stripe subpoena is outside the scope of the Court's order and must be quashed in its entirety.

Case No. 1:26-cv-00580 (AMD) (VMS)

Even setting aside the scope issue, financial transaction data has no bearing on service of process or diversity jurisdiction. The location of a credit card transaction does not establish domicile. See *Palazzo*, 232 F.3d at 42. Complete credit card numbers and dates of birth are among the most sensitive categories of personal information. No legitimate jurisdictional purpose justifies their disclosure.

The Stripe subpoena further violates VAWA's protective policies. Financial records are a primary tool by which abusers track and locate their victims. Disclosing Defendant's credit card numbers, transaction histories, and billing addresses to her identified abusers would create an immediate and concrete risk of harm.

**D. The Starry, Google, and Meta Subpoenas Are Overbroad and Must Be Narrowed**

**1. Time Period**

The Google and Meta subpoenas cover "January 1, 2020 through . . . the date of the final judgment." The Starry subpoena covers "January 1, 2020 to the present." These six-plus-year time periods have no rational connection to threshold jurisdictional questions. Diversity jurisdiction is assessed at the time of filing. See *Palazzo*, 232 F.3d at 42. At most, discovery relevant to domicile should be limited to a narrow window around January 2026.

**2. Starry Inc. (Exhibit A)**

The Starry subpoena seeks subscriber information for IP address 38.15.239.148 on December 14, 2024 at 6:26:31 PM. To the extent limited to identifying the subscriber at that specific time, it may be permissible. However, the subpoena demands 13 categories spanning six years, including detailed billing logs (Req. 5), all IP login/logoff sessions (Req. 9), MAC addresses (Req. 10), and all registration information ever provided (Req. 8). For subscriber identification, Plaintiffs need at most a name and current address. The remaining categories should be stricken.

17

Case No. 1:26-cv-00580 (AMD) (VMS)

### 3. Google LLC (Exhibit C)

The Google subpoena targets two email accounts and seeks 15 categories across seven sections, including location data (GPS, Wi-Fi, cell tower, Bluetooth- Req. 10-11), device identifiers (IMEI, MEID, serial number- Req. 8-9), all IP/connection logs for six years (Req. 5-7), billing records (Req. 4), all related/linked/recovery accounts and all data for each (Req. 12-14), and security questions and answers (Req. 1). Only subscriber name and current address are relevant to jurisdiction. The remaining requests should be stricken.

### 4. Meta Platforms, Inc. (Exhibit B)

The Meta subpoena is the broadest. It targets over 100 Facebook post URLs and Instagram accounts and seeks 20 categories across nine sections- everything sought from Google, plus the full content of all targeted posts and Instagram content (Req. 15-16), all reports and complaints by any user (Req. 17), all enforcement actions including shadow banning and content removal (Req. 18), all community standards violation determinations (Req. 19), and all linked accounts across Facebook, Instagram, Messenger, WhatsApp, and Threads (Req. 13). The content and enforcement requests (Req. 15-19) are directed at the merits of the defamation claims, which are currently stayed. These requests must be quashed.

### 5. The Stored Communications Act Independently Limits Disclosure

The Stored Communications Act, 18 U.S.C. § 2702, prohibits electronic communication service providers from divulging the contents of stored communications. The SCA contains no exception for civil subpoenas. See 18 U.S.C. § 2702(a)(1)-(2). Courts have consistently held that civil litigants cannot use subpoenas to circumvent the SCA's prohibitions. See *Theofel v. Farey-Jones,* 359 F.3d 1066, 1074 (9th Cir. 2004) (holding that stored emails cannot be obtained via civil subpoena lacking proper authorization under the SCA); *Crispin v. Christian Audigier, Inc.*, 717 F. Supp. 2d 965, 991 (C.D. Cal. 2010) (quashing subpoena seeking private Facebook and

18

Case No. 1:26-cv-00580 (AMD) (VMS)

MySpace messages as protected under the SCA, holding that private messages sent via social media platforms constitute electronic communications protected from civil discovery). To the extent the Meta subpoena seeks the "full content" of posts, private messages, and user-generated content (Req. 15-16), it seeks information that Meta is statutorily prohibited from producing. Plaintiffs' counsel's decision to serve a subpoena demanding content that federal law bars from disclosure further evidences the bad-faith nature of these discovery requests.

### E. Plaintiffs' Interrogatories and Document Requests Must Be Struck

Concurrently with the subpoenas, Plaintiffs served Defendant with a First Set of Interrogatories (**Exhibit N**) containing 14 interrogatories and a First Set of Requests for Production (**Exhibit O**) containing at least 17 document requests, each styled as "Jurisdictional Discovery."

These discovery requests must be struck in their entirety, and Defendant's obligation to respond should be stayed pending resolution of this motion, for four independent reasons. First, they exceed the scope of the Court's April 10 Order. The order authorizes "jurisdictional discovery . . . pertaining to service of process and diversity jurisdiction." It does not authorize open-ended interrogation of Defendant's entire financial, residential, medical, professional, and digital life. The interrogatories demand, among other things, identification of every physician, therapist, and mental health provider Defendant has seen (Interrogatory No. 7); every insurance policy she has maintained (No. 9); every electronic device she has used (No. 10); every account on every financial, payment, email, or social media platform (No. 11); and every detail of her immigration status (No. 3). The document requests are equally sweeping, demanding tax returns (RFP No. 3), all bank and credit card statements (RFP No. 6), passport pages with entry and exit stamps (RFP No. 14), airline tickets and boarding passes (RFP No. 15), internet service provider

19

records (RFP No. 17), and documents reflecting membership in religious organizations, social clubs, and gyms (RFP No. 11).

These requests are not "jurisdictional discovery." They are comprehensive personal surveillance disguised as jurisdictional inquiries. Many of the requested categories - medical providers, insurance policies, religious organization memberships, device purchase records - have no bearing on domicile and are patently irrelevant to any jurisdictional question before the Court.

Second, the requests are premature. Under Federal Rule of Civil Procedure 26(d)(1), a party may not seek discovery from any source before the parties have conferred as required by Rule 26(f), except when authorized by the Federal Rules, by stipulation, or by court order. The Court's order authorizes jurisdictional discovery, but only within the bounds of proportionality and relevance. The sweeping nature of these requests exceeds any reasonable interpretation of the Court's authorization.

Third, and critically, the requests violate VAWA's protective policies. They seek to force a VAWA petitioner to disclose her residential addresses, immigration filings, financial accounts, medical providers, and every detail of her physical movements to the very individuals identified in her VAWA petition as her abusers. No interpretation of "jurisdictional discovery" requires this result, and the Court should not permit it.

Fourth, requiring Defendant to respond to these requests - even with objections - would itself cause irreparable harm. The interrogatories are drafted so broadly that even the act of objecting on a category-by-category basis risks revealing protected information by negative inference. Defendant should not be compelled to engage with discovery requests that are facially improper and that this Court never authorized. The Court should strike these requests in their

entirety and stay any obligation to respond pending resolution of this motion. Requiring a VAWA petitioner to respond to interrogatories demanding her immigration filings, medical providers, insurance policies, and religious organization memberships - served by her identified abusers - is precisely the kind of revictimization through legal process that Congress sought to prevent.

### F. The Subpoenas Duplicate, Expand, and Circumvent Discovery Previously Narrowed in State Court

In the parallel Bronx County proceeding, Plaintiffs limited their requests to "non-content basic subscriber information" from Meta, Google, and Starry. See **Exhibits H-J**. The state court supervised this discovery under stipulated orders providing 21 days' notice to affected users. Defendant appeared under the pseudonym "Jane Doe" and filed motions to quash. After a hearing on February 2, 2026, the state court stayed all discovery and granted Defendant designation as "Jane Doe," recognizing her status as a domestic violence victim with VAWA prima facie approval. See **Exhibit K**.

What happened next is critical. Faced with a state court that had (a) limited discovery to basic subscriber information, (b) stayed all discovery, and (c) granted Defendant protective anonymity as a recognized domestic violence victim, Plaintiffs abandoned the proceeding entirely by filing Stipulations of Discontinuance without prejudice. See **Exhibits L-M**. The inference is unmistakable: <u>Plaintiffs recognized that the state court's protective framework was incompatible with their objective of conducting sweeping surveillance of a VAWA victim. Rather than accept the state court's protections, they forum-shopped to this Court and issued subpoenas seeking exponentially broader discovery - without any of the safeguards the state court had put in place.</u> Where the state court protected Defendant's identity as "Jane Doe," Plaintiffs now seek her GPS coordinates, residential address, financial records, and the personal

21

communications of her sublessor. Where the state court stayed discovery, Plaintiffs now demand 60+ categories of data, 14 interrogatories, and 17+ document requests. The purpose of this forum shopping is transparent: to circumvent a court that recognized Defendant's rights and to find one that has not yet had the opportunity to do so.

The scope of the escalation speaks for itself. In state court, Plaintiffs sought basic subscriber information from three platforms. In this Court, they seek 60+ categories of data from five entities- adding a payment processor (Stripe) and Defendant's sublessor (Ms. Viverette) including GPS coordinates, cell tower data, Bluetooth beacon data, device identifiers, complete financial transaction histories, the full content of social media posts, internal enforcement records, linked accounts across multiple platforms, and the personal communications and photographs of Defendant's sublessor. On top of this, they served 14 interrogatories and 17+ document requests directly on Defendant demanding everything from her medical providers and insurance policies to her religious organization memberships and passport stamps.

This pattern - abandoning narrowly supervised discovery in state court at the moment of judicial reckoning, then seeking vastly broader discovery in federal court - is directly relevant to the Court's proportionality and good-faith analysis under Rules 26(b)(1) and 26(g). It is also further evidence that <u>these discovery requests are not designed to obtain jurisdictional information but to conduct comprehensive surveillance of a domestic violence victim.</u>

### G. Plaintiffs' Counsel's Conduct During the Meet-and-Confer Process Demonstrates a Pattern of Overreaching

As detailed in Section II and in the meet and-confer correspondence (**Exhibit R**), Plaintiffs' counsel's conduct during the meet-and-confer process reflects a pattern of overreaching that is relevant to the Court's evaluation of the discovery at issue.

Case No. 1:26-cv-00580 (AMD) (VMS)

On the evening of April 13, 2026 - the same day Plaintiffs served the interrogatories and document requests - counsel demanded immediate compliance, threatened a motion to compel with fees and costs, announced that the meet-and-confer would be recorded without consent, and insisted on the participation of a non-appearing attorney. See **Exhibit R**. When Defendant objected to these conditions and proposed meeting within 24-48 hours, counsel ultimately refused to meet at all, conditioning any dialogue on Defendant's prior service of formal discovery responses - notwithstanding that Defendant's 30-day response period under the Federal Rules had not yet elapsed.

This conduct is inconsistent with the obligations imposed by Rule 26(g), which requires that discovery requests and responses be certified as "not interposed for any improper purpose" and as "neither unreasonable nor unduly burdensome or expensive." Fed. R. Civ. P. 26(g)(1)(B). It is also inconsistent with Local Civil Rule 37.3, which contemplates that parties will engage in genuine, good-faith efforts to resolve discovery disputes before seeking judicial intervention. Plaintiffs' counsel's additional conduct raises further concerns in this context. Counsel's initial correspondence misgendered Defendant, addressing her as "Mr. Chatterjee." While counsel may characterize this as inadvertent, viewed in the totality of the circumstances - service of sweeping discovery demands on a pro se VAWA victim, immediate threats of sanctions, recording conditions designed to create an adversarial and intimidating environment, insistence on the participation of non-appearing counsel over Defendant's explicit objection, and a categorical refusal to engage in the meet-and-confer process - this conduct reflects a deliberate campaign to unmask and intimidate a domestic violence victim through coercive litigation tactics. The meet-and-confer process was not employed as a good-faith mechanism to narrow disputes; it was deployed as a pressure campaign to force a pro se VAWA victim to capitulate to discovery

23

demands that this Court never authorized, without the protection of judicial oversight. This is precisely the kind of weaponization of legal process that VAWA was designed to prevent, and it warrants judicial intervention.

The Court should consider Plaintiffs' counsel's conduct in evaluating the overall pattern of discovery abuse, including the overbreadth and improper scope of the discovery at issue. See Fed. R. Civ. P. 26(g)(3) (authorizing sanctions for discovery certifications made in violation of Rule 26(g)).

## H. Sanctions Are Warranted Under Rule 26(g)(3)

Federal Rule of Civil Procedure 26(g)(1) requires that every discovery request be signed by an attorney or party, and that signature constitutes a certification that the request is: (A) consistent with the Federal Rules and warranted by existing law; (B) "not interposed for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation"; and (C) "neither unreasonable nor unduly burdensome or expensive, considering the needs of the case, prior discovery in the case, the amount in controversy, and the importance of the issues at stake in the action." Fed. R. Civ. P. 26(g)(1)(B).

Rule 26(g)(3) provides that "[i]f a certification violates this rule without substantial justification, the court, on motion or on its own, must impose an appropriate sanction on the signer, the party on whose behalf the signer was acting, or both. The sanction may include an order to pay the reasonable expenses, including attorney's fees, caused by the violation." Fed. R. Civ. P. 26(g)(3) (emphasis added). The rule is mandatory: upon finding a violation, the court "must" impose a sanction. See Mancia v. Mayflower Textile Servs. Co., 253 F.R.D. 354, 358 (D. Md. 2008) (holding that Rule 26(g) imposes an affirmative duty on counsel to conduct a

reasonable inquiry before certifying discovery requests and that sanctions are mandatory upon a finding of violation without substantial justification).

Plaintiffs' counsel's certifications on the subpoenas, interrogatories, and document requests at issue cannot withstand scrutiny under any prong of Rule 26(g)(1).

First, the requests are not consistent with the Court's April 10, 2026 Order. The order authorizes only non-party discovery from social media entities and ISPs, and jurisdictional discovery pertaining to service and diversity jurisdiction. Counsel certified subpoenas to a payment processor and to Defendant's sublessor - neither of which is a social media entity or ISP. Counsel certified interrogatories demanding medical providers, insurance policies, religious organization memberships, and device purchase records - none of which pertains to jurisdiction. No reasonable inquiry would have led counsel to conclude these requests were authorized.

Second, the requests bear the hallmarks of improper purpose. Counsel served 60+ categories of demands across five subpoenas, 14 interrogatories, and 17+ document requests - all in a case where the only authorized discovery is narrowly jurisdictional. Counsel demanded GPS coordinates, Bluetooth beacon data, cell tower records, complete financial histories, and the personal communications of Defendant's sublessor. These requests are not designed to establish service or jurisdiction. They are designed to unmask and construct a comprehensive surveillance profile of a domestic violence victim whose identity is protected by federal law. The timing is telling: counsel served the interrogatories and document requests on the evening of April 13, and within hours was already threatening a motion to compel with fees and costs- before Defendant's 30-day response period had even begun to run. Counsel then weaponized the meet-and-confer process itself, conditioning dialogue on pre-compliance and deploying coercive tactics - recording demands, inclusion of non-appearing counsel, immediate sanction threats- all designed

to pressure a pro se VAWA victim into surrendering protected information outside the safeguard of judicial oversight.

Third, the requests are unreasonable and unduly burdensome. Counsel certified requests spanning six-plus years of data, demanding categories (IMEI numbers, MAC addresses, Bluetooth data, security questions) that have no conceivable relevance to any jurisdictional question. Counsel attached a non-operative court order to the Meta and Google subpoenas, risking the production of data beyond the Court's authorization. Counsel issued the Viverette subpoena without attaching any court order at all. These are not the acts of counsel who conducted a reasonable inquiry before certifying discovery.

The Court should impose sanctions under Rule 26(g)(3), including an award of Defendant's reasonable expenses incurred in bringing this motion. Such sanctions are necessary not only to remedy the harm to Defendant but to deter the continued weaponization of discovery against a VAWA-protected victim.

## V. RELIEF REQUESTED

For the foregoing reasons, Defendant respectfully requests that the Court enter an Order:

1. Quashing the subpoena issued to Stripe, Inc. (**Exhibit D**) in its entirety;

2. Quashing the subpoena issued to Allison Viverette (**Exhibit E)** in its entirety;

3. Quashing or substantially limiting the subpoenas issued to Starry Inc. (**Exhibit A**), Meta Platforms, Inc. (**Exhibit B**), and Google LLC (**Exhibit C**) to permit only the production of current subscriber name and address information;

4. Striking Plaintiffs' First Set of Interrogatories (**Exhibit N**) and Plaintiffs' First Set of Requests for Production (**Exhibit O**) in their entirety, or in the alternative, substantially narrowing them to address only Defendant's current domicile;

Case No. 1:26-cv-00580 (AMD) (VMS)

5. Prohibiting Plaintiffs from seeking location data, device identifiers, financial records, post content, enforcement records, linked account information, or personal communications through any form of discovery at this stage;

6. Directing that any future subpoenas attach only the operative order governing discovery;

7. Entering a protective order pursuant to Rule 26(c) and consistent with the policies of 8 U.S.C. § 1367, limiting disclosure of Defendant's identifying, location, device, and financial information and prohibiting further dissemination;

8. Staying Defendant's obligation to respond to Plaintiffs' First Set of Interrogatories and First Set of Requests for Production pending resolution of this motion;

9. Imposing sanctions on Plaintiffs' counsel under Rule 26(g)(3) for certifying discovery requests that are unreasonable, disproportionate, and interposed for an improper purpose, including an award of Defendant's reasonable expenses incurred in bringing this motion; and

10. Granting such further relief as the Court deems just and proper.

## VI. CONCLUSION

The discovery at issue in this motion five third-party subpoenas, 14 interrogatories, and 17+ document requests - far exceeds the scope of this Court's April 10, 2026 Order, violates the confidentiality protections afforded to VAWA petitioners under 8 U.S.C. § 1367, is overbroad and disproportionate, and reflects a deliberate pattern of overreaching and harassment that has persisted through the meet-and-confer process. Plaintiffs' counsel certified these requests in violation of Rule 26(g), and sanctions are warranted.

Defendant is a victim of domestic violence whose prima facie VAWA petition has been approved by USCIS. The individuals who abused her are now attempting to use this Court's

27

Case No. 1:26-cv-00580 (AMD) (VMS)

<u>discovery mechanisms to locate, surveil, and further victimize her.</u> Defendant respectfully but urgently asks this Court to put a stop to it - to quash the subpoenas, strike the interrogatories and document requests, stay any obligation to respond, enter a protective order, and impose sanctions sufficient to deter further abuse of the discovery process.

Dated: Brooklyn, New York
        April 14, 2026

Respectfully submitted,

_____
/s/ Srijani Chatterjee
**SRIJANI CHATTERJEE**
Defendant, Pro Se
Email: srijanic91@gmail.com

Case No. 1:26-cv-00580 (AMD) (VMS)

## EXHIBIT INDEX

**Exhibit A:** Notice of Subpoena to Starry Inc. (April 13, 2026)

**Exhibit B:** Notice of Subpoena to Meta Platforms, Inc. (April 10, 2026)

**Exhibit C:** Notice of Subpoena to Google LLC (April 10, 2026)

**Exhibit D:** Notice of Subpoena to Stripe, Inc. (April 13, 2026)

**Exhibit E:** Notice of Subpoena to Allison Viverette (April 13, 2026)

**Exhibit F:** Court Order dated February 9, 2026 (Scheduling Order)

**Exhibit G:** Court Order dated April 10, 2026 (Discovery Limitations)

**Exhibit H:** Affirmation of Counsel for Google LLC in Response to Motion to Quash (State Court, Jan. 23, 2026)

**Exhibit I:** Affirmation of Counsel for Meta Platforms, Inc. in Response to Motion to Quash (State Court, Jan. 23, 2026)

**Exhibit J:** Affirmation of Counsel for Starry Inc. in Response to Motion to Quash (State Court, Jan. 23, 2026)

**Exhibit K:** Order, Supreme Court of New York, County of Bronx (Feb. 2, 2026)

**Exhibit L:** Stipulation of Discontinuance - Google (State Court)

**Exhibit M:** Stipulation of Discontinuance - Meta / Starry (State Court)

**Exhibit N:** Plaintiffs' First Set of Interrogatories to Defendant Srijani Chatterjee (Jurisdictional Discovery)

**Exhibit O:** Plaintiffs' First Set of Requests for Production to Defendant Srijani Chatterjee (Jurisdictional Discovery)

**Exhibit P:** USCIS Prima Facie Determination of VAWA Petition

**Exhibit Q:** Affidavit of Abuse in Support of VAWA Petition

**Exhibit R:** Meet-and-Confer Correspondence (April 13-14, 2026)

Case No. 1:26-cv-00580 (AMD) (VMS)

**CERTIFICATION OF WORD COUNT**

Pursuant to Local Civil Rule 7.1, the undersigned hereby certifies that the foregoing

Memorandum of Law contains approximately 7,200 words, exclusive of the caption, table of

contents, table of authorities, signature block, exhibit index, and certificate of service. This

memorandum complies with the 8,750-word limit for memoranda in support of motions.

_____

/s/ Srijani Chatterjee
Srijani Chatterjee
Defendant, Pro Se

30

Case No. 1:26-cv-00580 (AMD) (VMS)

**CERTIFICATE OF SERVICE**

I hereby certify that on April 14, 2026, I served a true and correct copy of the foregoing

Defendant's Consolidated Motion to Quash Third-Party Subpoenas, Strike Discovery Requests,

and for Protective Order, together with the accompanying Memorandum of Law and all exhibits,

on all counsel of record by electronic mail at the following addresses:

Daniel S. Szalkiewicz, Esq.
Veridian Legal P.C.
23 West 73rd Street, Suite 102
New York, New York 10023
daniel@veridianlegal.com

Cali Madia, Esq.
Veridian Legal P.C.
cali@veridianlegal.com

/s/ Srijani Chatterjee
Srijani Chatterjee
Defendant, Pro Se

31