UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

DEVEN SANON and SIMRAN HOTCHANDANI,

               Plaintiffs,

          -against-

SRIJANI CHATTERJEE, JOHN DOES 1-10, and
JANE DOES 1-10,

               Defendants.

Case No.: 1:26-cv-00580-AMD-VMS

---

## **MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT SRIJANI CHATTERJEE'S MOTION TO QUASH**

VERIDIAN LEGAL P.C.

Daniel S. Szalkiewicz, Esq.
Cali P. Madia, Esq.
23 West 73rd Street, Suite 102
New York, NY 10023
(212) 706-1007
daniel@veridianlegal.com
*Attorneys for Plaintiffs*

**Table of Contents**

**Table of Authorities** .................................................................................................................. 3

**PRELIMINARY STATEMENT** .............................................................................................. 4

**STATEMENT OF FACTS AS ALLEGED IN THE COMPLAINT AND PROCEDURAL HISTORY** ...................................................................................................................................... 5

**ARGUMENT** .............................................................................................................................. 8

**I.    The Non-Party Subpoenas Were Proper Under the April 10, 2026 Court Order** .......... 8

   **A.    Defendant Lacks Standing to Challenge the Nonparty Subpoena Based on Undue Burden or Relevance** ..................................................................................................................... 9

   **B.    The Subpoenas Fall Within the Scope of the Court's April 10, 2026 Order** ............. 10

      **1.    Subpoenas Relate to Social Media Entities and Internet Service Providers, as Discussed During Conference** ..................................................................................................... 10

      **2.    The Viverette Subpoena is Relevant to Determining Domicile** .............................. 12

      **3.    The Stripe Subpoena is Relevant to Domicile** ......................................................... 13

   **C.    Probative Value of Subpoenas Outweigh Defendant's Privacy Interests, Which Are Minimal, and the Subpoenas are Proportional to the Needs of the Case** .......................... 14

   **D.    Subpoenas Are Relevant to Defendant Chatterjee's Domicile/Determining Jurisdiction in this Case** ............................................................................................................. 16

   **E.    All Subpoenas Are Relevant to Service of Complaint** ................................................. 17

**II.    The Interrogatories and Requests for Production Fall Within the Scope of the April 10, 2026 Order** ..................................................................................................................................... 17

   **A.    The Interrogatories Are Within Scope and Relevant** .................................................. 18

   **B.    The Requests for Production Are Within Scope and Relevant** ................................... 20

**III.    8 U.S.C. §1367 Does Not Bar Civil Litigants from Obtaining Discovery** .................. 20

**IV.    Defendant's Stored Communications Act Arguments are Moot and Without Merit** 22

**V.    Should this Court Deem Subpoenas Overbroad, the Proper Solution is Modification** 23

**VI.    Defendant's Extraneous Arguments** ............................................................................... 23

   **A.    Meet and Confer** ............................................................................................................. 23

   **B.    Claims about Plaintiffs' Bronx County Petition for Pre-Action Discovery** ............... 24

   **C.    Sanctions Under Rule 26(g)(3) Are Wholly Unwarranted** .......................................... 24

**CONCLUSION** ......................................................................................................................... 25

## Table of Authorities

**Cases**

*Arista Records LLC v Doe*, 604 F3d 110 (2d Cir 2010) ............................................................ 16

*B.E. Elec. Corp. v Lalita 8922 Invs., LLC*, 2026 US Dist LEXIS 84226, at \*3 (EDNY Apr. 16, 2026, No. 2:25-cv-4759 [NJC] [ARL]) .................................................................... 18, 20

*Carl v. Edwards*, No. CV 16-3863 (ADS) (AKT), 2017 U.S. Dist. LEXIS 156378, at \*25 (E.D.N.Y. Sep. 25, 2017) ...................................................................................... 19

*Cazorla v Koch Foods of Mississippi, L.L.C.*, 838 F3d 540, 546 (5th Cir 2016) ..................... 5, 22

*Cuomo v Off. of the NY State AG*, 727 F Supp 3d 231, 236 [EDNY 2024]) .............................. 24

*Doe v Ashcroft*, 334 F Supp 2d 471, 487, 69 (SDNY 2004) ....................................................... 13

*Est. of Tillman v City of NY*, 345 FRD 379, 384 (EDNY 2024) .................................................... 9

*Everytown for Gun Safety Action Fund, Inc. v Defcad, Inc.*, 2022 U.S. App. LEXIS 19291, at \*5 (2d Cir July 12, 2022, No. 22-1183) ...................................................................... 16

*Finkelstein v. Bical*, No. 23-CV-00049-LDH-SJB, 2023 U.S. Dist. LEXIS 222888, at \*1 (E.D.N.Y. Dec. 14, 2023) ........................................................................................ 19

*Lever v. Lyons*, No. 16-CV-5130 (MKB) (SJB), 2021 U.S. Dist. LEXIS 16915, at \*18 (E.D.N.Y. Jan. 27, 2021) ......................................................................................... 19

*Lively v Wayfarer Studios LLC*, 2025 US Dist LEXIS 36850, at \*6-7 (SDNY Feb. 28, 2025, No. 24-cv-10049) ..................................................................................................... 15

*Major League Baseball Props. v Corporacion De TV Y Microonda Rafa*, 2023 US Dist LEXIS 13808, at \*2-3 (SDNY Jan. 26, 2023) ...................................................................... 10

*Matter of Cohen v Google, Inc.*, 25 Misc 3d 945, 952 (Sup Ct, NY County 2009) ..................... 17

*Moline v Pecos Riv. Talc LLC*, 2025 US Dist LEXIS 201669, at \*4 (SDNY Oct. 10, 2025) ........ 9

*People v Harris*, 36 Misc 3d 868, 876 (Crim Ct, New York County 2012) ................................ 24

*Sabhnani v Mirage Brands, LLC*, 2023 US Dist LEXIS 17155, at \*5 (EDNY Feb. 1, 2023, No. 22-cv-00936 [JS] [JMW]) ........................................................................................ 10

*Silverstone Holding Group, LLC v Zhongtie Dacheng (Zhuhai) Inv. Mgt. Co.*, 650 F Supp 3d 199, 202 (SDNY 2023) ............................................................................................. 10

*Sony Music Entertainment Inc. v Doe,* 326 F Supp 2d 556, 559 (SDNY 2004) ......................... 13

*State Farm Mut. Auto. Ins. Co. v. Khait*, 2023 U.S. Dist. LEXIS 171968, \*6 (EDNY Sep. 26, 2023]) ....................................................................................................................... 10

*Van Buskirk v United Group of Cos.*, 935 F3d 49, 53 (2d Cir 2019) ......................................... 17

*Virtu Fin. Inc. v. Axis Ins. Co.*, No. 20-CV-6293 (GBD) (KHP), 2021 U.S. Dist. LEXIS 178799, at \*2 (S.D.N.Y. Sep. 20, 2021) ................................................................................ 10

**Statutes**

Rule 26(g)(3) ............................................................................................................................. 24

*Rule 33(b)(4)* ............................................................................................................................ 18

*Rule 34(b)(2)(B)–(C)* ............................................................................................................... 18

## **PRELIMINARY STATEMENT**

This Court's April 10, 2026 Order authorized two categories of discovery: (1) non-party discovery from social media entities and internet service providers, and (2) jurisdictional discovery pertaining to service of process and diversity jurisdiction. Plaintiffs served discovery within the scope of that Order. Defendant Srijani Chatterjee ("Chatterjee" or "Defendant") now seeks to quash all five subpoenas, strike all interrogatories and document requests, and impose sanctions on Plaintiffs' counsel- effectively asking this Court to bar the very discovery needed to resolve the threshold jurisdictional issues that Defendant herself placed at issue by challenging subject matter jurisdiction, personal jurisdiction, venue, and service of process.

Defendant's central statutory argument-  that 8 U.S.C. § 1367 bars all civil discovery- is foreclosed by the Fifth Circuit's holding that the statute "just as clearly do[es] not preclude discovery from the individual claimants." *Cazorla v Koch Foods of Miss*., LLC, 838 F.3d 540, 552 (5th Cir. 2016). Defendant's own cited authority defeats her position.

The underlying facts are straightforward.  Defendant was once married to plaintiff Deven Sanon's ("Deven") brother.  Plaintiff Simran Hotchandani ("Simran" and, with Deven, "Plaintiffs") is Deven's wife.  Plaintiffs met Chatterjee on only a handful of occasions during her brief marriage to Deven's brother and yet, years later, she continues to anonymously create and pay to promote websites and articles defaming them.  Defendant's online content calls Simran transgender; accuses Simran of academic, immigration, and insurance fraud; claims Plaintiffs have a sham immigration marriage and that Deven is gay and "deviant[;]" along with countless other fabrications.  A review of Plaintiffs' Complaint and the harassing websites which remain online to this day – paired with information received from NameCheap and PayPal in pre-action

4

discovery – demonstrates Defendant's responsibility for creating and publishing (and paying others to create and publish) the hateful content about Plaintiffs.

Defendant used the cloak of anonymity to harm Plaintiffs and their family members.  Her statements were made through anonymous Facebook accounts and disposable Gmail accounts. Data from these accounts are fleeting and now Defendant wishes to use an unfiled year-old Prima Facie Determination as a sword so she can continue her anonymous online attack against Plaintiffs.  Claiming, after a divorce, to have submitted a VAWA application does not provide a person with carte blanche to destroy their former spouse's family members online.  It also does not provide Defendant with a blanket protection to avoid legal responsibility for her actions.

Defendant cannot reasonably challenge subject matter jurisdiction, personal jurisdiction, venue, and service and then prevent Plaintiffs from engaging in the jurisdictional discovery she made necessary. Her Motion to Quash must be denied.

**STATEMENT OF FACTS AS ALLEGED IN THE COMPLAINT AND PROCEDURAL HISTORY**

While the parties were once related by marriage, they had limited contact during this brief period, with Plaintiffs residing hundreds of miles away and meeting Defendant only a few times. (Compl. ¶¶ 22, 24–25).  Once Defendant's ex-husband filed for divorce, Defendant made it her stated mission to destroy her ex-husband and every member of his family, including Plaintiffs. (Compl. ¶¶ 30–31).  In text messages sent from her known telephone number to her then-soon-to-be ex-husband, Defendant threatened to "burn Deven, Simran the whore, and you to the ground," promised that "articles, podcasts, what have you" would expose the family, and warned that "for every smile you took . . . you will pay." (Compl. ¶ 33). Defendant, mindful that

5

her scheme could jeopardize her law license, immigration standing, and financial interests, undertook the campaign anonymously. (Compl. ¶ 6).

True to her threats, Defendant created or caused the creation of no fewer than eight "fake news" articles published on content-farm websites, including TechBullion.com, TheInscriberMag.com, BigNewsNetwork.com, USAWire.com, and others, none of which are legitimate journalistic organizations and all of which publish content without editorial review, typically for a fee. (Compl. ¶¶ 36–38, 81). These articles falsely accused Deven of committing "perverse criminal act[s] of voyeurism," hacking into his brother's phone to steal sexually intimate communications, and being "queer by sexual orientation" and engaging in "sexually deviant encounters of a perverted nature." (Compl. ¶¶ 39, 41). Simran was repeatedly and falsely labeled a "transgender" woman who had undergone "gender-reassignment surgery," and was accused of orchestrating insurance fraud, immigration fraud, education fraud, customs smuggling, and money laundering through a legitimate 501(c)(3) organization where she volunteered. (Compl. ¶¶ 42–43, 47–49, 55–56). Defendant further created dedicated websites, including BelizeCrime.com and CriminalAbusers.com, to host additional defamatory content, launched online petitions on Change.org and Fundly.com to revoke Simran's university degree based on fabricated residency fraud, and republished her articles across more than one hundred public Facebook groups throughout the country. (Compl. ¶¶ 74, 82–83). To amplify the reach of her campaign, Defendant paid Impester Media, a digital marketing agency, and to freelance writers to create and promote the content, as confirmed by PayPal records linking the payments to accounts in Defendant's name. (Compl. ¶¶ 102–106, 109, 111). Defendant also created or caused to be created an X (formerly Twitter) account impersonating Deven's grandfather, approximately fifteen Instagram accounts, including one called "CrimeAlertNY" and LinkedIn

personas such as "Dev J. Shah," a purported Senior Portfolio Manager at Citadel, to lend false credibility to her accusations and target Plaintiffs' professional networks. (Compl. ¶¶ 75, 80, 88–89). Finally, Defendant used the Gmail accounts to send an email about Plaintiff Sanon and register the websites. (Compl. ¶¶ 70, 102).

Pre-action discovery, including subpoenas to Namecheap, Inc. and PayPal conclusively identified Defendant as the responsible party, linking her name, email addresses, and bank accounts to the harassment accounts and website registrations. (Compl. ¶¶ 99–106). Defendant's campaign has inflicted severe and ongoing harm on Plaintiffs (Compl. ¶¶ 115-130).

On April 7, 2026, the parties met for a conference before the Court. At the conference, the Court indicated it would permit limited discovery in two areas: nonparty discovery related to the online postings and service providers and jurisdictional discovery. DE 31 pg. 27-35. On April 10, 2026, the court issued an order to this effect.

After receiving the April 10, 2026 Court Order, Plaintiffs served five non-party subpoenas. On April 10, Plaintiff served subpoenas on Google and Meta. Notices of the subpoenas were sent to Defendant the same day by email and First-Class Mail. On April 13, Plaintiff served a subpoena on Starry seeking information concerning the registered user of a single IP address. The IP address was received from NameCheap as being one of the most recent logins to the account that registered the false and harassing domain names (DE 1, Complaint ¶102) and also the location from which the most recent payment for the domain name originated. A minute after the subpoena was emailed to Starry's counsel a notice of subpoena was served on Defendant by email. On April 13, 2026, our office served Allison Viverette with a subpoena for information relating to Ms. Chatterjee's residence. Previously produced Paypal records showed a October 1, 2025 transaction from Defendant to Allison Viverette for $2,065 with the memo

line "Srijani Chatterjee – Deposit for 214 Atlantic Ave Flat 2B minus Allison rent for October[.]" *See* Docket Enrty 1, Complaint ¶104. The notice of subpoena was served on Defendant by email the same day.

The final subpoena issued was to Stripe seeking information regarding three transactions. These three transactions represent payments for the two websites described in the Complaint. See DE 1, Complaint ¶102. Once again, a minute after the subpoena was served on Stripe's counsel, a notice of subpoena was served on Defendant by email.

## **ARGUMENT**

### I.    **The Non-Party Subpoenas Were Proper Under the April 10, 2026 Court Order**

Each of the subpoenas served related to the online postings and service providers or jurisdictional discovery

To survive a motion to quash, "the party issuing the subpoena must demonstrate that the information sought is relevant and material to the allegations and claims at issue in the proceedings". *Moline v Pecos Riv. Talc LLC*, 2025 US Dist LEXIS 201669, at \*4 (SDNY Oct. 10, 2025). "Although not unlimited, relevance, for purposes of discovery, is an extremely broad concept" and "[o]nce the issuing party demonstrates relevance, 'the movant bears the burden of persuasion in a motion to quash a non-party subpoena" (*Id.*). "'Relevance' under Rule 26 is 'construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case'". *Est. of Tillman v City of NY*, 345 FRD 379, 384 (EDNY 2024). "Motions to quash subpoenas as 'entrusted to the sound discretion of the district court" (*Moline*, at 4-5).

Defendant is unable to meet her burden to quash the subpoenas.

8

**A. Defendant Lacks Standing to Challenge the Nonparty Subpoena Based on Undue Burden or Relevance**

Initially, Defendant's request to quash the nonparty subpoena should be denied because of the longstanding rule that "[i]n the absence of a claim of privilege a party usually does not have standing to object to a subpoena directed to a non-party witness." *State Farm Mut. Auto. Ins. Co. v. Khait*, 2023 U.S. Dist. LEXIS 171968, *6 (EDNY Sep. 26, 2023]). This is due to the fact "[a] party's general desire to thwart disclosure of information by a non-party… simply not an interest sufficient to create standing." *Sabhnani v Mirage Brands, LLC*, 2023 US Dist LEXIS 17155, at *5 (EDNY Feb. 1, 2023, No. 22-cv-00936 [JS] [JMW]). Defendant lacks the relevant standing to move to quash the non-party Subpoenas.

"The recipient of a subpoena may move to quash a subpoena that poses an undue burden…By contrast, a non-recipient 'lacks standing to challenge subpoenas issued to non-parties on the grounds of relevancy or undue burden'". *Silverstone Holding Group, LLC v Zhongtie Dacheng (Zhuhai) Inv. Mgt. Co.*, 650 F Supp 3d 199, 202 (SDNY 2023).

An exception to the general rule, which does not apply in the current case, is "a non-subpoenaed party has standing… if it has a privilege, privacy[,] or proprietary interest in the documents sought." *Major League Baseball Props. v Corporacion De TV Y Microonda Rafa*, 2023 US Dist LEXIS 13808, at *2-3 (SDNY Jan. 26, 2023). The privacy right must be a "substantial privacy right." *Virtu Fin. Inc. v. Axis Ins. Co.*, No. 20-CV-6293 (GBD) (KHP), 2021 U.S. Dist. LEXIS 178799, at *2 (S.D.N.Y. Sep. 20, 2021).

With respect to Meta, Google, Starry, and Stripe, Defendant has apparently denied that she is behind the postings and therefore does not have a privilege, privacy, or proprietary interest in the content.

Defendant also lacks standing to challenge the subpoena based on any alleged undue burden placed on Ms. Viverette.  Defendant's arguments with regard to relevance must be disregarded for the same reason. In any event, Ms. Viverette was able to comply with the subpoena expediently, as the contracts and communications were all easily searchable. Finally, to the extent Defendant asserts that the material involves a "substantial privacy right," the material voluntarily provided by Ms. Viverette can be shown *in camera* and demonstrates that no right was violated.

**B.  The Subpoenas Fall Within the Scope of the Court's April 10, 2026 Order**

Defendant argues that the April 10 Order permits discovery solely "pertaining to service of process and diversity jurisdiction." See Memo of Law pg. 12-14. Defendant has too narrowly read the Order. This Court authorized two independent categories of discovery: (1) non-party discovery from social media entities and internet service providers, and (2) jurisdictional discovery pertaining to service of process and diversity jurisdiction. The first category is not limited to jurisdictional purposes; it encompasses discovery from social media entities and ISPs related to the underlying claims, including the fleeting electronic evidence at issue. The second category- jurisdictional discovery- is not limited to social media entities or ISPs; it encompasses any discovery proportional to the needs of the case that bears on service of process or diversity jurisdiction.

**1.  Subpoenas Relate to Social Media Entities and Internet Service Providers, as Discussed During Conference**

During the conference, the court indicated: "[b]ecause even if there was state court discovery that happened prior to this action, the plaintiffs' position is that the abusive conduct

10

that underlies this lawsuit is ongoing, or at least it's happened recently, so up-to-date discovery is relevant" and the "nonparty discovery related to the social media and the service providers can go forward" (Tr. p. 28, ln. 24- p. 29, ln. 11; p. 34, lns. 20-23).

The Court's Order was clear; two discovery issues would be moving forward "one is information in the custody of service providers" "and then I think the jurisdictional discovery should go forward.  It seems like there are two issues that are brewing here.  One is the service…as well as the position…there's not proper jurisdiction because there's not actually diversity here" (Tr. p. 28, lns. 21-23, p. 29, lns. 9-22).  The relevance with regard to Plaintiffs' subpoenas on social media companies and internet service providers is not limited to Defendant's claims about her domicile or whether she was personally served; it relates to potential evidence that is in the process of being destroyed- specifically, IP addresses and other data that focuses on liability, as evidenced by the Court's mention of the ongoing abusive conduct being relevant for discovery. Despite Defendant's claims, the new subpoenas do not seek "exponentially broader discovery from the same entities." (Memo, p. 9).

As detailed in the Declaration of Daniel S. Szalkiewicz, Plaintiffs have met and conferred with the attorney for Google and Meta and agreed to certain parameters, including limiting the scope of the subpoena production to basic subscriber information ("BSI"). See Szalkiewicz Declaration, Exhibit 1.  Specifically, Plaintiffs have agreed to narrow the scope of the subpoena to Basic subscriber information.  "Basic subscriber information includes: (1) a subscriber's name and (2) address; (3) the subscriber's local and long distance telephone connection records, or records of session times and durations; (4) the subscriber's length of service and types of service he has utilized; (5) any telephone or instrument number or other subscriber number or identity, including any temporarily assigned network address; and (6) the subscriber's means and source

11

of payment for the service". *Doe v Ashcroft*, 334 F Supp 2d 471, 487, 69 (SDNY 2004).  All of the information being sought is relevant to confirming Defendant's possession and control of the accounts which are harassing Plaintiffs or, at the very least, reasonably could lead to relevant information.  The information also faces a significant risk of being lost as cable providers "typically retain user activity logs for only a limited period of time before erasing data." *See, e.g., Sony Music Entertainment Inc. v Doe,* 326 F Supp 2d 556, 559 (SDNY 2004).

Given the narrowed scope of the modified subpoenas, there is no basis to disturb them.

**2.  The Viverette Subpoena is Relevant to Determining Domicile**

The Viverette subpoena falls within the second category of authorized discovery-jurisdictional discovery pertaining to service of process and diversity jurisdiction-  which is not limited to social media entities or ISPs. The Court's April 10 Order authorized jurisdictional discovery without restricting the categories of persons from whom such discovery may be sought.

Defendant has raised in her Motion to Dismiss that 214 Atlantic Avenue, 2B "was not Defendant's dwelling or usual place of abode" (Doc. No. 27, ¶4).  She has additionally claimed that her "presence in New York was temporary and tied to a short-term accommodation arrangement for a specific purpose" (*Id.*, p. 7).

Previously produced Paypal records received as part of the now-discontinued petition for pre-action discovery showed a October 1, 2025 transaction from Defendant to Allison Viverette for $2,065 with the memo line "Srijani Chatterjee – Deposit for 214 Atlantic Ave Flat 2B minus Allison rent for October[.]"  See DE 1, Complaint ¶104.  The Viverette Subpoena seeks information probative of the above-referenced factors and was mindful that the nature of Defendant's payment to Ms. Viverette signaled her living arrangement may not have been

12

reduced to a contract (it was) and/or that Defendant and Ms. Viverette may be roommates. The subpoena sought contractual documents relating to Defendant's leasing of 214 Atlantic Avenue; payment records relating to her leasing of 214 Atlantic Avenue; communications relating to Defendant's living arrangement, including her travel plans and receipt of letters/packages at the apartment which would support a domicile finding; information about who else lived in the 214 Atlantic Avenue apartment; and any photographs Ms. Viverette possessed showing Defendant or her possessions within the 214 Atlantic Avenue apartment. All of these items are relevant or reasonably could lead to matter that could bear on Defendant's domicile, including how permanent the living arrangement appears and the location of Defendant's lawyers. As importantly, images showing Defendant in her 214 Atlantic Avenue apartment at or around the time Plaintiffs' Complaint was served would be relevant to service of process.

Defendant's argument that the Viverette subpoena does not contain a court order is without merit, as there is no requirement under Rule 45 that a court order be attached to a subpoena.

Plaintiffs served notice of the Viverette subpoena on Defendant by email on April 13, 2026- the same day the subpoena was served on Ms. Viverette- either satisfying the prior-notice requirement of Federal Rule of Civil Procedure 45(a)(4) or not causing any prejudice to Defendant as she was immediately made aware of the subpoena.

### 3. The Stripe Subpoena is Relevant to Domicile

Initially, Stripe was among the entities involved in the Bronx County §3102 which Defendant raises in her arguments and which parties discussed during the court conference. The Stripe subpoena targets three specific transactions that represent payments for the two defamatory websites identified in the Complaint. The information being sought from Stripe is

relevant to jurisdictional discovery because the billing address, account holder name, address history, and IP addresses associated with the transactions all bear directly on Defendant's domicile.

**C. Probative Value of Subpoenas Outweigh Defendant's Privacy Interests, Which Are Minimal, and the Subpoenas are Proportional to the Needs of the Case**

"When the party moving to quash a subpoena is a non-recipient asserting a privacy interest, the Court must 'weigh the relevance or probative value of the documents being sought against the privacy interests . . . asserted.'" *Lively v Wayfarer Studios LLC*, 2025 US Dist LEXIS 36850, at *6-7 (SDNY Feb. 28, 2025, No. 24-cv-10049). "The burden of persuasion in a motion to quash a subpoena issued in the course of civil litigation is borne by the movant." (*Id.).*

Defendant wishes to limit inquiry into various accounts to only the name and current address she provided them. Respectfully, this is deliberately designed to prevent Plaintiffs from determining jurisdiction by limiting them to the information Defendant has provided nonparties rather than what her I.P. addresses and other relevant information actually show. Plaintiffs' Complaint confirms that Defendant has been known to use fake names when engaging in her harassment (Comp. ¶¶88-97, 75, 136). Moreover, it disregards the clear reason for this Court ordering two types of discovery to proceed - first, because of the fleeting nature of electronic evidence and ongoing bad acts which are relevant to Plaintiffs' claims and second and independently from the first, Defendant's alleged jurisdictional issues.

Here, the subpoenas seek basic subscriber information, IP address logs, and account registration data from social media entities and ISPs – precisely the categories of non-party discovery this Court authorized in its April 10, 2026 Order. This information is directly relevant

14

to two threshold issues the Court has identified as ripe for discovery: service of process and diversity jurisdiction. Without knowing the subscriber identity behind the accounts used to publish the defamatory content, Plaintiffs cannot establish authorship – the central factual predicate of every claim in this action[1]. The Second Circuit has recognized that where a plaintiff makes a prima facie showing of actionable harm, a defendant's privacy interest is a factor to be weighed and may be outweighed by the plaintiff's need for the information.  *See Arista Records LLC v Doe*, 604 F3d 110 (2d Cir 2010).  Indeed, in *Everytown for Gun Safety Action Fund, Inc.* the Second Circuit affirmed the denial of a stay of discovery orders requiring anonymous defendants to disclose their identities, holding that "the defendants' expectation of privacy, while a factor, is outweighed in this case by [plaintiff's] need for the information," particularly where the identities and addresses of anonymous defendants were "critical to resolving the issue of personal jurisdiction." *Everytown for Gun Safety Action Fund, Inc. v Defcad, Inc.*, 2022 U.S. App. LEXIS 19291, at *5 (2d Cir July 12, 2022, No. 22-1183). The same logic applies here. This Court has expressly authorized jurisdictional discovery, and the subpoenaed information is critical to resolving the issue of jurisdiction.

Moreover, Defendant's asserted privacy interests are minimal and are largely self-defeated by her own conduct.  Defendant's 214 Atlantic Avenue address was a matter of public record since before this case was filed.  She was served at that address.  She claims to live in a different country but has also sued the New York City Department of Housing Preservation[2] and Development for discriminatory harassment relating to her job at the New York City agency. Defendant has signed filings for this very litigation from Brooklyn, New York.  She notes

---

[1] Plaintiffs have been successful in confirming Defendant's responsibility for a portion but not all of the harassive conduct.

[2] As part of that litigation, Defendant also filed an unredacted EEO Complaint form containing the same phone number she indicated a need to keep secret from Plaintiffs in this litigation.

"Manhattan, NY" as her location on her X account[3].  A party who has voluntarily placed her identity and location into the public domain through her own court filings and social media activity cannot credibly claim that the same information is so sensitive that it must be shielded from discovery. The right to anonymous speech "must be balanced against the need to assure that those persons who choose to abuse the opportunities presented by this medium can be made to answer for such transgressions," and those who cause harm through anonymous online conduct should not be permitted to "hid[e] behind an illusory shield of purported First Amendment rights." *Matter of Cohen v Google, Inc.*, 25 Misc 3d 945, 952 (Sup Ct, NY County 2009). Defendant's privacy interest is, at best, negligible, and it is vastly outweighed by Plaintiffs' need for the subpoenaed information to prosecute their claims and establish this Court's jurisdiction – the latter of which Plaintiffs would not need to do but for Defendant's bad faith claims about where she lives and whether she was served.

### D.  Subpoenas Are Relevant to Defendant Chatterjee's Domicile/Determining Jurisdiction in this Case

"An individual's citizenship, within the meaning of the diversity statute, is determined by his domicile. . . [in other words] the place where a person has his true fixed home and principal establishment, and to which, whenever he is absent, he has the intention of returning." *Van Buskirk v United Group of Cos.*, 935 F3d 49, 53 (2d Cir 2019).  Federal courts consider a multitude of factors when determining an individual's domicile, including but not limited to: "current residence; voting registration; driver's license and automobile registration; location of brokerage and bank accounts; membership in fraternal organizations, churches, and other associations; places of employment or business;…payment of taxes;…whether a person owns or rents his place of residence; the nature of the residence (i.e., how permanent the living

---

[3] The same X account on which she indicates she is a "Lawyer. Alma Mater @EdinburghUni. Poet & Financial Writer. British-Indian TCK"

arrangement appears);…the location of a person's physician, lawyer, accountant, dentist, stockbroker, etc." *D.B.E. Elec. Corp, supra*.

Here, because of Defendant's immigration status and the fact that she resides in New York City, some of the above factors, including her voting registration, driver's license, and automobile registration are simply not applicable or less likely to exist. Plaintiffs sought to examine the other factors relevant to determining domicile by way of subpoenas, interrogatories, and requests for production.

### E.  All Subpoenas Are Relevant to Service of Complaint

Defendant, on the record, has claimed the "papers were not delivered to me, nor to a person who resides with me, instead they were handed to an acquaintance who does not live with me" (Tr. P. 12, ln. 15-22).  In her Motion to Dismiss, Defendant posited "if Defendant was located abroad at the time, Plaintiffs were required to comply with Rule 4(f) and applicable international service conventions, which they did not" (Doc. No. 27, ¶4).  Accordingly, in addition to being relevant to the "social media entities and internet service providers" aspect of the Order, the subpoenas directed at Starry Inc.; Meta Platforms, Inc.; Google LLC; and Stripe, Inc. are also relevant because they seek I.P. address information related to Defendant's accounts. Defendant's ongoing access to these accounts from her 214 Atlantic Avenue address is relevant to her domicile; her access to these accounts at or around the time service occurred is relevant to service of the Complaint and demonstrating Defendant was not, in fact, abroad at the time of service.

### II.    The Interrogatories and Requests for Production Fall Within the Scope of the April 10, 2026 Order

The second class of discovery this court ordered was jurisdictional discovery. Defendant argues that she is not domiciled in New York. In assessing domicile, a court reviews, among other factors:

> current residence; voting registration; driver's license and automobile registration; location of brokerage and bank accounts; membership in fraternal organizations, churches, and other associations; places of employment or business; . . . payment of taxes; . . . whether a person owns or rents his place of residence; the nature of the residence (i.e., how permanent the living arrangement appears); . . . and the location of a person's physician, lawyer, accountant, dentist, stockbroker, etc."
> *Lever v. Lyons*, No. 16-CV-5130 (MKB) (SJB), 2021 U.S. Dist. LEXIS 16915, at *18 (E.D.N.Y. Jan. 27, 2021).

Interrogatories and requests for documents are permitted when limited to discovery on the jurisdictional issue. *See e.g., Carl v. Edwards*, No. CV 16-3863 (ADS) (AKT), 2017 U.S. Dist. LEXIS 156378, at *25 (E.D.N.Y. Sep. 25, 2017). It is important to note that Defendant failed to serve request-by-request objections with the specificity required by the Federal Rules. *See Rule 33(b)(4)* and *Rule 34(b)(2)(B)–(C)*; *see also Finkelstein v. Bical*, No. 23-CV-00049-LDH-SJB, 2023 U.S. Dist. LEXIS 222888, at *1 (E.D.N.Y. Dec. 14, 2023). Instead, Defendant broadly asserts that all of the demands should be struck. However, as detailed below, the discovery devices served on Defendant were proper for jurisdictional discovery.

## A. The Interrogatories Are Within Scope and Relevant

Plaintiffs have propounded 19 interrogatories on Defendant, which Defendant claims are "personal surveillance disguised as jurisdictional inquiries" specifically noting that "[m]any of the requested categories – medical providers, insurance policies, religious organization memberships, device purchase records – have no bearing on domicile and are patently irrelevant to any jurisdictional question" (Doc. No. 34, p. 20). Plaintiffs' interrogatories are broken down

18

into four categories: 1) Domicile and residency; 2) Devices, internet access, and online accounts; 3) Contacts with New York; and 4) Service of Process.

The interrogatories relating to domicile and residency intentionally mirror the case law discussing factors courts consider in determining domicile, namely social clubs; religious organization memberships; bank accounts; and professional service providers. Plaintiffs do not seek the substance of medical treatment or the details of religious practice- they seek the location of these providers and organizations, which is a recognized domicile factor. Representations Defendant has made to USCIS about her living arrangements and intentions are also relevant to determining domicile. So, too, is where she works; the names and addresses for doctors, lawyers, and accountants; whether she maintains insurance policies; and where she owns real estate. *See D.B.E. Elec. Corp. v Lalita 8922 Invs., LLC*, 2026 US Dist LEXIS 84226, at \*3 (EDNY Apr. 16, 2026, No. 2:25-cv-4759 [NJC] [ARL]).

The interrogatories relating to devices and internet access are also relevant to determining Defendant's domicile and ties to New York, both of which are relevant to jurisdiction. The interrogatories call upon Defendant to identify her devices, when she used them, and the locations at which the devices were used. They also call upon Defendant to identify all social media accounts she used during this time.

Also relevant to jurisdiction is Defendant's contacts with New York – both for personal jurisdiction and service of process.  This line of questioning probes the dates in which Defendant has been in New York from January 1, 2025 to the present; whether she has filed lawsuits in the State of New York; and whether she has represented to any government entity, employer, landlord, or financial institution that she is a resident of New York.

19

The final line of questioning goes into Defendant's presence in New York on certain dates and calls upon Defendant to identify her location and other pertinent details on the dates when various sworn statements she filed in this case were made.

All of these questions are directly relevant to her domicile and/or jurisdictional inquiries.

**B. The Requests for Production Are Within Scope and Relevant**

Plaintiffs' Requests for Production largely mirror their Interrogatories and seek contracts relating to Defendant's residence; utility bills; tax returns; driver's licenses or identification cards; voter registration records; bank documents; work documents; vehicle registration and insurance documents; real estate documents; insurance documents; membership documents for social clubs, religious organizations, gyms, etc.; documents relating to professional service providers; documents relating to her immigration status; passport pages; and travel documents. All of this information is relevant to Defendant's domicile as well as whether she was physically present in New York at the time she was served. Domicile is a fact-intensive inquiry requiring evaluation of the totality of a party's contacts with the forum. Plaintiffs' requests are all tethered to a recognized domicile factor or to the service of process dispute which this Court has authorized the parties to explore. The discovery is proportional to the needs of the case because, without it, Plaintiffs cannot carry their burden of establishing diversity jurisdiction, and this Court cannot resolve the threshold jurisdictional questions that Defendant has placed at issue.

**III.    8 U.S.C. §1367 Does Not Bar Civil Litigants from Obtaining Discovery**

Defendant's central contention – that 8 U.S.C. § 1367 creates an absolute bar on civil discovery by private litigants – fundamentally misreads the statute.  Even the most rudimentary reading of §1367 makes clear that it restricts only government officials and agencies from

20

disclosing information relating to VAWA beneficiaries; it does not restrict private parties, courts, or the civil discovery process.  Defendant's citation to *Cazorla v. Koch Foods of Miss., LLC* is crucial here for two reasons: first, because it specifically indicates that 8 U.S.C. §1367 controls government agencies' disclosure of information but "did not similarly excuse the claimants themselves" from complying with discovery demands.  *See Cazorla v Koch Foods of Mississippi, L.L.C.*, 838 F3d 540, 546 (5th Cir 2016).  The Fifth Circuit Court of Appeals was very specific, calling the text of the statute "unambiguous" and stating "Section 1367 and its implementing regulation clearly preclude discovery from the EEOC but they just as clearly do *not* preclude discovery from the individual claimants" (*Id.* 552).  That this case is the strongest one Defendant could find for her argument illustrates two points: the first is that 1367 does not restrict private individuals; the second is that this case is going to be plagued by Rule 11 motions.

Second, Defendant's repeated characterization of her USCIS prima facie determination as a "federal finding" that Plaintiffs are her "abusers" grossly overstates the legal significance of that document. A VAWA prima facie determination is a preliminary administrative screening for immigration benefits eligibility, not a judicial finding of abuse, not a final adjudication, and not a determination binding on this Court. Indeed, the USCIS determination letter itself states in bold capital letters that establishing a prima facie case "DOES NOT NECESSARILY MEAN THAT YOUR PETITION WILL BE APPROVED" (Doc. No. 34, p. 144). Defendant's attempt to transform this preliminary screening into a judicial decree that Plaintiffs are "abusers" — and to weaponize it as a shield against all civil discovery — is unsupported by law and should be rejected.

21

Third, even accepting that Defendant's VAWA status warrants some degree of sensitivity in the discovery process, it does not justify the sweeping relief she seeks: quashing all five subpoenas, striking all interrogatories and document requests, and imposing sanctions on Plaintiffs' counsel. The Court has already appropriately limited discovery to two narrow categories — non-party discovery from social media entities and internet service providers, and jurisdictional discovery pertaining to service and diversity. Plaintiffs are entitled to conduct that discovery. To the extent Defendant has legitimate confidentiality concerns, the proper remedy is a narrowly tailored protective order under Rule 26(c) — not a blanket prohibition on discovery that would effectively prevent Plaintiffs from establishing this Court's jurisdiction over their claims. Defendant cannot invoke VAWA to immunize herself from the ordinary obligations of civil litigation while simultaneously filing lawsuits in her own name in other courts, posting publicly about this litigation on social media, and maintaining a public presence in New York.

## IV. Defendant's Stored Communications Act Arguments are Moot and Without Merit

Because Plaintiffs have agreed to limit the Meta and Google subpoenas to non-content basic subscriber information, Defendant's Stored Communications Act argument is moot. The SCA prohibits disclosure of the contents of stored communications. BSI is non-content data expressly excluded from the SCA's protections.

Even if the SCA argument were not moot, Defendant's reliance on the SCA is misplaced and fundamentally mischaracterizes the nature of the content at issue and the scope of the statute's protections. The information Plaintiffs are seeking relates solely to information which has been posted on public Facebook groups or elsewhere online for public consumption. Courts have consistently distinguished between public and private communications with regard to the

22

SCA and have all concluded that "the SCA protects only private communications and allows disclosure of electronic communication when it is not overbroad." *People v Harris*, 36 Misc 3d 868, 876 (Crim Ct, New York County 2012). Here, "[p]ublication to third parties is the issue" and New York courts have previously held "Tweets are not emails sent to a single party… There can be no reasonable expectation of privacy in a tweet sent around the world. The court order is not unreasonably burdensome to Twitter, as it does not take much to search and provide the data to the court." (*Id.* 872-873). Defendant's cases are distinguishable to the facts at issue here for precisely this reason.

### V.    Should this Court Deem Subpoenas Overbroad, the Proper Solution is Modification

"Courts generally prefer modifying subpoenas over outright quashing." (*Cuomo v Off. of the NY State AG*, 727 F Supp 3d 231, 236 [EDNY 2024]). Where the movant herself concedes that portions of the subpoenas seek relevant information, the Court should modify the subpoenas to the extent necessary — not grant the extraordinary relief of quashing them in their entirety. To the extent any individual request within a subpoena exceeds the scope of the Court's Order, the Court may strike or narrow that specific request while permitting the balance to proceed.

### VI.    Defendant's Extraneous Arguments
#### A. Meet and Confer

Defendant devotes nearly five pages of her memorandum to complaints about Plaintiffs' counsel's conduct during the meet-and-confer process, including that counsel misgendered her in an initial email, proposed recording the conference, included a consulting attorney on correspondence, and conditioned the meet-and-confer on receipt of formal objections. These grievances, whatever their characterization, are not grounds for quashing subpoenas or striking discovery requests. The Court should note that prior to filing the motion to quash, Plaintiff's

counsel did send Defendant an email offering to meet and confer- that email was excluded from Defendant's motion papers. *See Exhibit 2*.

### B. Claims about Plaintiffs' Bronx County Petition for Pre-Action Discovery

As Plaintiffs will hopefully state for the last time, the Bronx County action was a petition for pre-action discovery under CPLR §3102(c) directed at third-party technology companies for the limited purpose of identifying the anonymous individual responsible for the online harassment campaign.  Defendant was never a named respondent in that proceeding.  The petition served its purpose as it resulted in information which conclusively identified Defendant as the responsible party for much of the harassment, linking her name, email addresses, and bank accounts to several harassment accounts.  Once Plaintiffs possessed sufficient proof to identify their harasser, they discontinued the pre-action petition and filed this lawsuit.  The parties' respective domiciles necessitated Plaintiffs bringing the case in federal court.

### C. Sanctions Under Rule 26(g)(3) Are Wholly Unwarranted

Defendant's request for mandatory sanctions under Rule 26(g)(3) fails because Plaintiffs' discovery requests are substantially justified.  Rule 26(g)(3) provides for mandatory sanctions only "if a certification violates this rule without substantial justification."  Each and every demand and subpoena issued in this matter has been done with substantial justification to the needs of this case and pursuant to this Court's directives.  Examination of Plaintiffs' subpoenas, requests for production, and interrogatories show that each demand was tethered to the Court's April 10, 2026 Order.  Plaintiffs should not be penalized for or deterred from obtaining discovery in this case.  Plaintiffs' counsel conducted a reasonable inquiry, certified discovery requests that are consistent with this Court's Order and tethered to recognized legal standards, and served them in the ordinary course of litigation. Sanctions are unwarranted.

## **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request this court deny Defendant's motion in its entirety.

Dated: April 27, 2026
New York, New York

VERIDIAN LEGAL P.C.

By: _____/Daniel S. Szalkiewicz_____
Daniel S. Szalkiewicz
Cali P. Madia
*Attorneys for Plaintiffs*

25