**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

DEVEN SANON and SIMRAN HOTCHANDANI,

Plaintiffs,

-against- No. 1:26-cv-00580 (OEM)(MMH)

SRIJANI CHATTERJEE, JOHN DOES 1–10,
and JANE DOES 1–10,

Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

# REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

# TABLE OF CONTENTS

**PRELIMINARY STATEMENT** ..... **5**

I. The RICO Claim Fails for Four Independent Reasons. ..... 5

II. The Court Also Lacks Jurisdiction. ..... 10

III. The State-Law Claims Fail Independently. ..... 11

IV. Dismissal Should Be With Prejudice. ..... 13

**CONCLUSION** ..... **14**

## TABLE OF AUTHORITIES

**Cases**

*Abacus Fed. Sav. Bank v. Lim*, 75 A.D.3d 472 (1st Dep't 2010) ....12
*Amaranth LLC v. J.P. Morgan Chase & Co.*, 71 A.D.3d 40 (1st Dep't 2009)....12
*A.M.P. v. Benjamin*, 201 A.D.3d 50 (3d Dep't 2021)....13
*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ....13
*Boyle v. United States*, 556 U.S. 938 (2009) ....5, 6
*Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 129 S. Ct. 1862 (2009)....14
*Chloé v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158 (2d Cir. 2010)....10
*City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173 (2d Cir. 2014).....13
*Cleveland v. United States*, 531 U.S. 12 (2000) ....8
*Cofacrèdit, S.A. v. Windsor Plumbing Supply Co.*, 187 F.3d 229 (2d Cir. 1999)....7
*Cuoco v. Moritsugu*, 222 F.3d 99 (2d Cir. 2000)....14
*D'Addario v. D'Addario*, 901 F.3d 80 (2d Cir. 2018) ....6
*Dees v. Knox*, No. 24-1574-cv, 2025 WL 485019 (2d Cir. Feb. 13, 2025) (summary order) ....8
*DeFalco v. Bernas*, 244 F.3d 286 (2d Cir. 2001) ....7
*Denney v. Deutsche Bank AG*, 443 F.3d 253 (2d Cir. 2006) ....9
*Empire Merchs., LLC v. Reliable Churchill LLLP*, 902 F.3d 132 (2d Cir. 2018) ....9
*Fat Brands Inc. v. Ramjeet*, 75 F.4th 118 (2d Cir. 2023) ....11
*First Cap. Asset Mgmt. v. Satinwood, Inc.*, 385 F.3d 159 (2d Cir. 2004)....7
*First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763 (2d Cir. 1994)....10
*Firth v. State*, 98 N.Y.2d 365 (2002) ....12
*Fischer v. Maloney*, 43 N.Y.2d 553 (1978) ....11
*Geraci v. Probst*, 15 N.Y.3d 336 (2010)....12
*Goldfine v. Sichenzia*, 118 F. Supp. 2d 392 (S.D.N.Y. 2000) ....6
*Gurung v. Metaquotes Ltd.*, No. 1:23-cv-06362 (OEM)(PK), 2024 WL 3849460 (E.D.N.Y. Aug. 16, 2024)....6, 14
*Hemi Grp., LLC v. City of New York*, 559 U.S. 1 (2010) ....9
*Kim v. Kimm*, 884 F.3d 98 (2d Cir. 2018)....8
*Kousisis v. United States*, 605 U.S. 114 (2025)....8
*Laborers Loc. 17 Health & Benefit Fund v. Philip Morris, Inc.*, 191 F.3d 229 (2d Cir. 1999) ....9
*May Flower Int'l, Inc. v. Amoy Food Ltd.*, No. 24-CV-4909 (OEM)(VMS), 2025 WL 3089291 (E.D.N.Y. Nov. 5, 2025) ....6
*Med. Marijuana, Inc. v. Horn*, 604 U.S. 593, 145 S. Ct. 931 (2025) ....9
*Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A.*, 30 F.3d 339 (2d Cir. 1994) ....7

*Satanic Temple, Inc. v. Newsweek Digital, LLC*, 177 F.4th 202 (2d Cir. 2026)....................10
*Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178 (2d Cir. 2008) ....................7
*Stringer v. Kim*, 226 A.D.3d 607 (1st Dep't 2024)....................12
*TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493 (2d Cir. 2014) ....................13
*Uber Techs., Inc. v. Wingate, Russotti, Shapiro, Moses & Halperin, LLP*, No. 25-CV-0522 (OEM)(VMS), 2026 WL 2364217 (E.D.N.Y. Aug. 14, 2026) ....................6
*Union Mut. Fire Ins. Co. v. Subin Assocs., LLP*, No. 25-CV-2652 (OEM)(PCG), 2026 WL 2363677 (E.D.N.Y. Aug. 14, 2026) ....................14
*United States v. Turkette*, 452 U.S. 576 (1981) ....................6, 8
*Walden v. Fiore*, 571 U.S. 277 (2014)....................11

**Statutes and Rules**

18 U.S.C. § 1503....................7
18 U.S.C. § 1964(c) ....................9
28 U.S.C. § 1367(c)(3)....................14
Fed. R. Civ. P. 12(b)(6)....................5
N.Y. C.P.L.R. § 302....................10
N.Y. C.P.L.R. § 215(3) ....................11
N.Y. Civ. Rights Law § 76-a ....................13

## PRELIMINARY STATEMENT

Plaintiffs' Opposition confirms the merit of Defendant's dismissal memorandum. The Ninth Cause of Action fails on four independent grounds: the enterprise element, the pleaded 18 U.S.C. §1503 ("§1503) predicate, proximate causation, and RICO injury. These are not four versions of a single factual dispute; each is a separate pleading defect, and **any one of them is dispositive**.

Plaintiffs also ask the Court to look beyond the pleading, asserting that the RICO conduct has been "established through pre-action discovery, third-party productions, and Defendant's own filings" (Pl. Opp. at 11). None of that is before the Court under Fed. R. Civ. P. 12(b)(6), and new assertions about damages, domicile, and actual malice cannot amend Plaintiff's First Amended Compliant ("1st Am. Compl.") by way of their Opposition to a dismissal motion. Three grounds draw no response: the Fed. R. Civ. P. 8 and 10 defect (Def. Mem. at 25), due process (Def. Mem. at 24), and the defamation merits (Def. Mem. at 26–27).

## I. THE RICO CLAIM FAILS FOR FOUR INDEPENDENT REASONS.

### A. Plaintiffs Plead No Enterprise.

An association-in-fact requires "a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose" (*See Boyle v. United States*, 556 U.S. 938, 946 (2009). Plaintiffs' recitation of what *Boyle v. United States*, supra, does not require — hierarchy, fixed roles, formalities (Pl. Opp. at 16) — answers an argument Defendant did not make. The contested element is relationships among the associates that Plaintiffs clearly failed to establish in their 1st Am. Compl..

Paragraph 275 asserts "ongoing relationships with one another," then supplies its only support: "PayPal records confirm that Defendant made recurring payments to Impester Media … and … to freelance writers" (1st Am. Compl. at ¶ 275). Each runs from Defendant to a vendor;

**payments by one person to several vendors are not relationships among them**. Therefore, Plaintiffs claim of '"ongoing relationships', supra, fails.

That is dispositive under *D'Addario*: relationships with a central figure do not show that defendants "agreed to join forces with each other," and where they "are not all alleged to be connected in some overarching way," there is no association-in-fact (*See D'Addario v. D'Addario*, 901 F.3d 80, 101 (2d Cir. 2018), applied in *Uber Techs., Inc. v. Wingate, Russotti, Shapiro, Moses & Halperin, LLP*, No. 25-CV-0522 (OEM)(VMS), 2026 WL 2364217, at *7 (E.D.N.Y. Aug. 14, 2026).

In ¶276 of their 1st Am. Compl., Plaintiffs allege that Impester Media "coordinated with content-farm website operators" (Pl. Opp. at 16). That does not cure the defect in ¶275: the coordination occurred "at Defendant's direction and in exchange for payment" (1st Am. Compl. at ¶ 273(b). This Court rejected the same inference in *Gurung, infra*: a vendor's "standard business transaction" <u>does not establish</u> "a common racketeering purpose" where it acts "independently and without coordination" (*See Gurung v. Metaquotes Ltd.*, No. 1:23-cv-06362 (OEM)(PK), 2024 WL 3849460, at *9–10 (E.D.N.Y. Aug. 16, 2024). Significantly, here in the 1st Am. Compl. no vendor is alleged to have dealt with another.

Plaintiffs' assertion that an enterprise is "more readily proven by what it does" (Pl. Opp. at 16) describes a jury instruction in a criminal trial where a party failed to properly plead proof (*See Boyle v. United States, supra*, 556 U.S. at 941–42, 948).

**Separateness from the pattern.** An enterprise must also be "an entity separate and apart from the pattern of activity in which it engages" (*See United States v. Turkette*, 452 U.S. 576, 583 (1981), and "if the sole purpose of the alleged enterprise is to perpetrate the alleged fraud, there can be no enterprise for RICO purposes" (*See Goldfine v. Sichenzia*, 118 F. Supp. 2d 392,

401 (S.D.N.Y. 2000). This Court dismissed on that same ground in *May Flower Int'l, Inc. v. Amoy Food Ltd.*, No. 24-CV-4909 (OEM)(VMS), 2025 WL 3089291, at *6 (E.D.N.Y. Nov. 5, 2025), where the complaint offered "no support for that assertion beyond that bare conclusion" Id. ¶¶273 and 278 of the 1st Am. Compl. likewise merely recite the requirements of *May Flower Int'l, Inc. v. Amoy Food Ltd.*, *supra* (1st Am. Compl. at ¶¶ 273, 278). The only purpose pleaded is creation and publication of the challenged content (1st Am. Compl. at ¶ 261) — **the alleged wrong itself**.

**Distinctness.** A RICO person may be one of several enterprise members; however, significantly, here the alleged unidentified participants are pleaded as acting solely at Defendant's direction — she committed the predicates "solely by virtue of her position in and control over the affairs of the Enterprise," and "[e]very other participant acted at her direction" (1st Am. Compl. at ¶¶ 285–286) — with no facts showing an organization functioning apart from her (*See Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A.*, 30 F.3d 339, 344 (2d Cir. 1994).

**Continuity.** "[T]he mere fact that predicate acts span two years is insufficient, without more, to support a finding of a closed-ended pattern" (*See First Cap. Asset Mgmt. v. Satinwood, Inc.*, 385 F.3d 159, 181 (2d Cir. 2004) (Emphasis Added). Plaintiffs plead one purpose, i.e. the same participants, and two alleged victims (1st Am. Compl. at ¶ 299); "only a handful of participants" does not suffice (*See Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 184 (2d Cir. 2008). Open-ended continuity fails because the **pleaded objectives** — i.e. Defendant's immigration petition and a family dispute — are inherently terminable (*See Cofacrèdit, S.A. v. Windsor Plumbing Supply Co.*, 187 F.3d 229, 243–44 (2d Cir. 1999). Moreover, Plaintiffs argument that because Defendant litigated this case does not support their

meritless claim of 'continuity' as required in RICO jurisprudence (Pl. Opp. at 19). In fact, litigation merely "demonstrates that the parties are lawfully litigating their respective rights" (*See May Flower Int'l, Inc. v. Amoy Food Ltd.*, *supra*, at *7). *DeFalco v. Bernas*, *infra*, was a post-trial review of an ongoing extortion scheme with escalating demands, not a pleading-stage ruling on a finite dispute (*See DeFalco v. Bernas*, 244 F.3d 286, 320–21 (2d Cir. 2001).

**B. Plaintiffs Answer the Wrong Question on the Predicate Acts.**

Plaintiffs insist that "[a]lmost nothing in this scheme … is a litigation filing" (Pl. Opp. at 15), but the issue is what they identify as §1503 predicate.

The pleading answers exclusively in terms of litigation filings: ¶296 alleges obstruction "by fabricating and filing false sworn documents with this Court," and ¶297 enumerates the "specific predicate acts," each a filing "**on the docket of this Court**" (1st Am. Compl. at ¶¶ 296–297). *Kim v. Kimm, 884 F.3d 98, 104 (2d Cir. 2018)* holds that "allegations of frivolous, fraudulent, or baseless litigation activities — without more — <u>cannot constitute a RICO predicate act</u>" (*See Kim v. Kimm*, *supra*, 884 F.3d at 104. That case addressed "a single frivolous, fraudulent, or baseless lawsuit" (*Id.*, at 105) does not help them: the predicate pleaded consists of **filings in a single action — this one**. In *Kim v. Kimm, supra, 884 F.3d at 98*, plaintiffs "rel[ied] exclusively on allegations of fraudulent activities directly related to … legal proceedings" (*See Dees v. Knox*, No. 24-1574-cv, 2025 WL 485019, at *2 (2d Cir. Feb. 13, 2025) (summary order).

**Wire fraud.** Plaintiffs invoke *Kousisis v. United States*, 605 U.S. 114, 118-120 (2025) claiming that no economic loss is required (Pl. Opp. at 21). However, the same case states the very requirement Plaintiffs fail to meet here: obtaining the victim's money or property "must have been the aim, not an incidental byproduct," and schemes targeting "the exercise of the Government's regulatory power" or seeking "to deprive another of intangible interests

unconnected to property" do not satisfy it. Id., at 120-121, *supra*. The pleaded "dual objective" is to deprive Plaintiffs of "prospective business relationships and economic advantages" and to obtain "immigration-related benefits, work authorization, and employment for Defendant" (1st Am. Compl. at ¶289); clearly **neither is Plaintiffs' money or property**. Their government-transfer argument (Pl. Opp. at 20) likewise fails because where a scheme seeks "to alter the exercise of regulatory power — say, by tricking the Government into handing over a gaming license — the fraudulent-inducement theory has no role to play" (*See Kousisis, supra*, 145 S. Ct. at 1397, *citing Cleveland v. United States*, 531 U.S. 12, 23–24 (2000). A work authorization (1st Am. Compl. at ¶294) is that license. Nor does 18 U.S.C. §1546 rescue the claim: the pleaded injury flowed from third parties' reliance on statements about Plaintiffs, not USCIS's (1st Am. Compl. at ¶302).

### C. Plaintiffs Do Not Answer Their Own Pleaded Causal Chain.

Plaintiffs argue they were "the direct and intended targets of the scheme" (Pl. Opp. at 26), but **intent is not causation**. Neither satisfies proximate cause: "[t]he key word is 'direct'" (*See Med. Marijuana, Inc. v. Horn*, 604 U.S. 593, 612, 145 S. Ct. 931, 945 (2025); *accord Empire Merchs., LLC v. Reliable Churchill LLLP*, 902 F.3d 132, 145 (2d Cir. 2018) (rejecting that being a "foreseeable[ ] and intended target" establishes proximate cause).

Plaintiffs allege that "the injuries flowed directly from **third parties' exposure to and reliance on** the materially false statements" (1st Am. Compl. at ¶ 302). However, no loss occurs unless **a third party encounters the content, credits it, and then declines to invest or hire**. A theory requiring "mov[ing] well beyond the first step" "cannot meet RICO's direct relationship requirement" (*See Hemi Grp., LLC v. City of New York*, 559 U.S. 1, 10 (2010). Moreover, injuries "wholly derivative of harm to a third party … are generally deemed indirect and as a

consequence too remote, as a matter of law, to support recovery" (*See Laborers Loc. 17 Health & Benefit Fund v. Philip Morris, Inc.*, 191 F.3d 229, 236 (2d Cir. 1999).

**D. Plaintiffs Plead No Concrete RICO Injury.**

*Med. Marijuana, Inc. v. Horn*, 604 U.S. *supra* at 612 does not establish that every monetary harm is a RICO injury: "not every monetary harm" qualifies. In fact, the Court drew the line at a gas-station owner who cannot recover for pain and suffering, but may recover if his injuries "force him to shut his doors" (*See Med. Marijuana, Inc. v. Horn*, 604 U.S.*, supra*, at 601, 613. Furthermore, 18 U.S.C. § 1964(c) requires an actual loss that is "clear and definite" (*See Denney v. Deutsche Bank AG*, 443 F.3d 253, 266 (2d Cir. 2006).

No item Plaintiffs identify meets that standard. Even assuming the $25,000 reputation-management expenditure is cognizable, it was incurred after the fact on an existing investor's recommendation (1st Am. Compl. at ¶¶ 153–154) — remedial spending, not a loss any predicate act directly caused. The asserted lost investment identifies no investor, transaction, amount, or failed closing; the only particular is "at least one investor who conducted an additional background check" (1st Am. Compl. at ¶ 301(b), which is not a loss — particularly where Plaintiff Sanon "has successfully raised impressive amounts" in the same period (1st Am. Compl. at ¶ 152)(Emphasis Added). Plaintiffs' argument that he "may still have raised less, later, or on worse terms" (Pl. Opp. at 25) appears nowhere in the 1st Am. Complaint. The asserted lost employment is speculative & identifies no employer, position, offer, or compensation; lost "offers" are pleaded on "information and belief" (1st Am. Compl. at ¶¶ 160–161, 301(c), and unrealized losses are not cognizable (*See First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763, 768 (2d Cir. 1994). Finally, even the alleged monitoring and discovery costs identify no amount (1st Am. Compl. at ¶ 301(e)–(f). RESUME

## II. THE COURT LACKS JURISDICTION BECAUSE OF NO NEXUS.

**General jurisdiction.** Plaintiffs contend Defendant is domiciled in New York (Pl. Opp. at 27) "[u]pon information and belief" (1st Am. Compl. at ¶ 22). A prima facie showing "must include an averment of facts that, if credited by the ultimate trier of fact, would suffice to establish jurisdiction" (*See Chloé v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163 (2d Cir. 2010). However, a hedged allegation made by Plaintiffs about Defendant's domicile is not a fact.

**The defamation exemption.** Cases relied upon by Plaintiffs fail to support their arguments: For instance, New York's long-arm statute "**expressly exempts defamation claims** from most of its provisions," leaving **§ 302(a)(1) as the only available basis** (*See Satanic Temple, Inc. v. Newsweek Digital, LLC*, 177 F.4th 202, 208 (2d Cir. 2026); *See also* N.Y. C.P.L.R. § 302(a)(2), (a)(3) (excepting "a cause of action for defamation of character arising from the act"). Under § 302(a)(1), statements "'not written in or directed to New York' are not enough, even if 'they were posted on a medium that was accessible in this state'" (*See Satanic Temple*, 177 F.4th at 208)(Emphasis Added). Plaintiffs allege only content produced by an India-based firm and unidentified writers (1st Am. Compl. at ¶ 272), accessible in New York as it is everywhere else which is a prima facie failed argument because of the caselaw presented above.

**Conspiracy and effects.** Plaintiffs invoke *Fat Brands*, *infra*; however, that requires "the alleged agent acted in New York" (*See Fat Brands Inc. v. Ramjeet*, 75 F.4th 118, 125 (2d Cir. 2023). Significantly, no participant is alleged to have done so. Tagging New York officials or addressing a New York audience (1st Am. Compl. at ¶¶ 45, 105–107) does not supply defendant-created contacts: "mere injury to a forum resident is not a sufficient connection," and "the plaintiff cannot be the only link" (*See Walden v. Fiore*, 571 U.S. 277, 285, 290 (2014).

## III. THE STATE-LAW CLAIMS FAIL INDEPENDENTLY.

**Emotional distress.** The Third Cause incorporates the defamation allegations (1st Am. Compl. at ¶ 213) and identifies the conduct as "creating a collection of false and outrageous 'fake news' articles" (1st Am. Compl. at ¶ 214). Intentional infliction "may not be used as a substitute for an available traditional tort remedy" where the conduct "falls well within the ambit of" that tort (*See Fischer v. Maloney*, 43 N.Y.2d 553, 557–58 (1978)(Emphasis Added). Nor does the "non-expressive" conduct Plaintiffs invoke (Pl. Opp. at 29–30) save the claim. The alleged wedding-planner impersonation accusation and the surprise package preceded a June 2023 wedding, and the employer e-mail is dated August 5, 2023 (1st Am. Compl. at ¶¶ 92–98) — each barred by N.Y. C.P.L.R. § 215(3)'s one-year period in an action filed February 2, 2026. Furthermore, the package is not attributed to Defendant (1st Am. Compl. at ¶ 96), the remaining allegations/claims against Defendant are made only "[u]pon information and belief" (1st Am. Compl. at ¶¶ 95, 99), and the WhatsApp allegation has no date (1st Am. Compl. at ¶ 173).

**Timeliness.** New York applies the single publication rule to online material, and republication requires "a separate aggregate publication from the original, on a different occasion," "intended to and actually reach[ing] a new audience" (*See Firth v. State*, 98 N.Y.2d 365, 369–71 (2002), with the original publisher "participat[ing] in or approv[ing] of the decision to republish" (*See Stringer v. Kim*, 226 A.D.3d 607, 608 (1st Dep't 2024); See also *Geraci v. Probst*, 15 N.Y.3d 336, 342–43 (2010). ¶142 alleges Facebook posting; however, no date and no occasion separate from the original dissemination; ¶113's Belize targeting is "[u]pon information and belief" (1st Am. Compl. at ¶¶ 113, 142). Moreover, neither pleads republication on a different occasion within the period, and Plaintiffs' concession that this "is a fact question" (Pl. Opp. at 29) confirms that their alleged facts are incorrectly pleaded. Finally, even the 2024

publications (1st Am. Compl. at ¶ 109) are time-barred because of the one-year rule discussed supra**.**

**Tortious interference.** The Sixth Cause incorporates the same publications (1st Am. Compl. at ¶ 241), identifies no contract, counterparty, or transaction, and only pleads injury "[u]pon information and belief" (1st Am. Compl. at ¶ 246). Plaintiffs' own authority sets the limitations period: three years where "the gravamen of a complaint is economic injury, rather than merely reputational harm," but where a plaintiff alleges "harm to her professional reputation that had an indirect effect on her ability to form business relationships," the claim "sound[s] in defamation" and takes the one-year statute of limitation to pursue such a case. (*See Amaranth LLC v. J.P. Morgan Chase & Co.*, 71 A.D.3d 40, 47–48 (1st Dep't 2009). That is this case (1st Am. Compl. at ¶ 301(b)–(d).

**Conspiracy and aiding and abetting.** These counts incorporate the underlying torts (1st Am. Compl. at ¶¶ 226, 234, 254), and New York "does not recognize an independent cause of action for conspiracy to commit a civil tort"; it "stands or falls with the underlying tort" (*See Abacus Fed. Sav. Bank v. Lim*, 75 A.D.3d 472, 474 (1st Dep't 2010).

**Section 79-n.** Plaintiffs' own authority requires "actual or imminent physical harm resulting from bias-related violence or intimidation" (Pl. Opp. at 30, *citing A.M.P. v. Benjamin,* 201 A.D.3d 50, 54 (3d Dep't 2021). The Seventh Cause pleads "emotional distress, reputational injury, economic loss, and ongoing fear" (1st Am. Compl. at ¶ 252) — no physical harm — and a "developed record" (Pl. Opp. at 31) cannot supply an unpleaded element.

**Anti-SLAPP.** Plaintiffs rely upon *Satanic Temple, Inc. v. Newsweek Digital, LLC, supra*, 177 F.4th at 210–11 for the proposition that New York's anti-SLAPP provisions do not apply federally, but it holds the opposite as to the provision that matters: N.Y. Civ. Rights Law § 76-a

"is substantive law," and its "heightened fault standard" applies in federal court (*Satanic Temple, Inc. v. Newsweek Digital, LLC, supra*, 177 F.4th at 210–11). The pleading recites the standard — Defendant acted "with actual malice" (1st Am. Compl. at ¶¶ 197, 202) — which is merely a legal conclusion (*See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## IV. DISMISSAL SHOULD BE WITH PREJUDICE BECAUSE OF DEFECTIVE PLEADING.

Plaintiffs' opposition in summary is: "[…there are no defects. But if the Court disagrees as to any count, the appropriate remedy is leave to replead" which merely invites an exercise in futility (Pl. Opp. at 31). Are Plaintiffs' defective pleadings substantive and do they identify any basis for believing a second amendment would cure. Leave may be denied where a party "failed to specify how amendment would cure the pleading deficiencies" (*See TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014). *City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173, 188 (2d Cir. 2014) affirmed denial after one amendment — and "that amendment was not in response to a motion to dismiss identifying particular deficiencies" — because "plaintiffs have identified no additional facts or legal theories … they might assert if given leave to amend". Id. *Cuoco v. Moritsugu*, 222 F.3d 99 (2d Cir. 2000) denied leave where the plaintiff "suggested no new material" and the defect was "substantive": "better pleading will not cure it" Id. This Court denied leave requested "[i]n case the Court deems any part of the Complaint should be dismissed" or "[i]n the event such claims were to be dismissed," because plaintiffs "failed to identify any additional facts or legal theories" (*See May Flower, supra*, at *8; *See also Union Mut. Fire Ins. Co. v. Subin Assocs., LLP*, No. 25-CV-2652 (OEM)(PCG), 2026 WL 2363677, at *15 (E.D.N.Y. Aug. 14, 2026) ("**This is not enough.**").

Plaintiffs defects are one of key missing facts: a relationship among participants independent of Defendant's direction and payment; a predicate other than a filing in this

litigation; a causal chain not running through third-party choices; an investment lost or offer withdrawn; and a contact between Defendant and New York other than Plaintiffs' presence here. Plaintiffs identify none and do not explain how another pleading could supply them — after pre-action discovery in Bronx County and one amendment here. A pleading supplying them would not correct the Complaint; **it would be a different theory of the case**.

**Supplemental jurisdiction.** Plaintiffs now concede that diversity does not support this action, stating that "[t]he Alien-Versus-Alien Diversity Argument Is Irrelevant Because Jurisdiction Rests on a Federal Question" (Pl. Opp. at 12). Because RICO is the sole basis for original jurisdiction, its dismissal at the pleading stage supports declining supplemental jurisdiction under 28 U.S.C. § 1367(c)(3). Although discretionary, the practice is settled; the case Plaintiffs cite arose on this sequence (*See Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 129 S. Ct. 1862, 1865 (2009), and this Court has done so in every RICO action dismissed on the pleadings (*See Gurung v. Metaquotes Ltd.*, *supra*, at *11 *citing May Flower Int'l, Inc. v. Amoy Food Ltd.*, *supra*, at *14.

## CONCLUSION

For these reasons, the First Amended Complaint should be dismissed with prejudice.

Dated: September 16, 2026
San Francisco, California

Respectfully submitted,
/s/ Marc D. Pelta
Pelta | Law
1390 Market Street, Suite 200
San Francisco, CA 94102
marc@peltalaw.com | (415) 963-1152
*Counsel for Defendant Srijani Chatterjee*
*(admitted pro hac vice)*